UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
_____

Vicky Ware Bey, In Propria Persona, Sui Juris

JOHN DOE  1-1000, JANE DOE 1-1000

PLAINTIFF / PETITIONER / CLAIMANT / CRIME               SUMMONS
VICTIM / AGGRIEVED AND INJURED PARTY

                                                                                    CASE #

VS

Eric Adams, Mayor
CITY OF NEW YORK

Louis Molina, Commissioner for
NEW YORK CITY DEPARTMENT OF CORRECTIONS

NEW YORK CITY DEPARTMENT OF CORRECTIONS

Melanie Whinnery Executive Director for
NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM
NYCERS

NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM
NYCERS

JOHN DOE  1-10,000, JANE DOE 1-10,000

DEFENDANT(S)
_____

To the above named Defendant(s) in the Caption

You are hereby summoned to answer the Hybrid Petition and Complaint in this action and to serve

a copy of your answer, within 21 days after the service of this summons, exclusive of the day of

service or within 30 days after the service is complete if this summons is not personally delivered

to you within the State of New York, and in case of your failure to appear or answer, judgment

will be taken against you by default for the relief demanded in the complaint, and an extension of

time to answer this Summons and Complaint will not be extended or consented to by the Plaintiff who is the injured party in this matter.  The basis of venue is the United States District Court for the Southern District located at 600 Pearl Street, New York, New York 10007 which is where the Defendants principal place of business is located.

Date:   March 29, 2022

/s/ Vicky Ware Bey_____
Vicky Ware Bey, In Proper Persona, Sui Juris
Authorized Representative
Vicky Ware, ex Relatione
All Rights Reserved, UCC 1-207, 1-308,1-103
c/o 80 Patton Avenue
Wyandanch Territory, New York Republic [11798]

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
_____

Vicky Ware Bey,  In Propria Persona, Sui Juris

JOHN DOE  1-1000, JANE DOE 1-1000

| | |
|---|---|
| Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved And Injured Party | SUMMONS AND HYBRID PETITION AND COMPLAINT |
| VS | CASE # |
| | TRIAL BY JURY DEMANDED |

Eric Adams, Mayor
CITY OF NEW YORK

Louis Molina, Commissioner for
NEW YORK CITY DEPARTMENT OF CORRECTIONS

Melanie Whinnery Executive Director for
NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM
NYCERS

NEW YORK CITY EMPLOYEES RETIREMENT SYSTEM
NYCERS

JOHN DOE  1-10,000, JANE DOE 1-10,000

DEFENDANT(S)
_____

## JURISDICTION

This Court has original jurisdiction of all civil and criminal actions arising under the United States

Constitution, Laws and Treaties of the United States, diversity of citizenship pursuant to the First

Amendment and Article III in the United States Constitution Title 28 U.S.C 1331, Title 28 U.S.C

1332, Title 28 U.S.C 1343, Title 28 U.S.C 1369, Title 28 U.S.C 1343, Title 42 USC 1985  as well

as supplemental jurisdiction pursuant to Title 28 U.S.C 1367. This matter in controversy exceeds

the sum of $75,000.00.

## VENUE

Venue is proper in the United State District Court, Southern District in New York pursuant to 28 U.S.C 1391 because The City of New York principle place of business and Headquarters is located in the County of New York City which is located at City Hall, New York, 10007 which is within the Southern District and New York City Department of Corrections, New York City Employees Retirement Systems are departments that operate under the auspice of the City of New York . Venue is also proper in the United State District Court, Southern District in New York pursuant to Title 28 U.S.C 1443 and Title 28 U.S.C 1411 with regard to personal injuries, permanent injuries and wrongful deaths.

## PARTIES

Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, In Proper Persona, Sui Juris, c/o 80 Patton Avenue, Wyandanch Territory, New York Republic [11798]. Defendant(s)The City of New York a Corporation which principle place of business is located at 100 Church Street, New York, New York 10007; Commissioner for New York City Department of Corrections is located at 75-20 Astoria Boulevard, East Elmhurst, New York, 11370; Melanie Whinnery Executive Director for New York City Employees Retirement Systems 335 Adams Street, Brooklyn, New York 11201

## PRELIMINARY STATEMENT

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, brings her Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted as a redress for injuries intentionally inflicted on her by the Defendants and for her grievances pursuant to the United State Constitution's First Amendment which provides:  *"Congress shall make no law respecting an establishment of religion, or*

*prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably to assemble, and to petition the Government for a redress of grievances."*

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, In Propria Persona, Sui Juris also filed a Notice of Claim with the City Of New and a complaint with the Equal Employment Opportunity Commission and received a Right to Sue Letter.

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, In Propria Persona, Sui Juris asks the court to take careful consideration concerning matters involved in this case because it involves egregious crimes which are acts of terrorism that affects millions of people.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants who intentionally and actionably discriminated against her based upon her national origin, sex/gender, age, religion, occupational related physical disability, and in terms of compensation by the Defendants who retaliated against her and conspired to ruin her life and deprive her of her rights under color of law in retaliation for the  Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party objecting to being sexually harassed at work by another employee, and filing a complaint about employment retaliation,  unfair labor practices and filing a complaint with the New York City Human Rights Commission # 1-1-1104660386 which are protected activities.

The Defendants discriminate against the Plaintiff / Petitioner / Claimant / Crime Victim /

Aggrieved and Injured Party based upon her current status as a crime victim / stalking victim which is directly employment related and an act of retaliation against her committed by the Defendants who are depriving her and her relatives of their inalienable rights, human rights, and their rights secured by the United States Constitution.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for injuries for which relief could be granted is to recover damages from the Defendants who intentionally conspired to and who are depriving her and her relatives of their rights under color of law, office and authority in violation of Title 18 USC 241, and Title 18 USC 242.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants who intentionally retaliate against her by willfully breaching their duty of reasonable care, breaching their fiduciary duties by intentionally impairing and diminishing her ordinary pension, and arbitrarily and capriciously denying her a performance of disability retirement in error or law in addition to ignoring her documented performance of duty injuries which are the direct and proximate cause of her physical disabilities .

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants who retaliate against her by conspiring to, and who are depriving her and her relatives of their rights under color of law, office and authority   by intentionally depriving them of their inalienable rights,  human rights, civil rights and rights that

are secured by the United States Constitution, Article VI, Section 2; The Treaty of Peace and Friendship; The Declaration of Rights of Indigenous Peoples; CERD; ICCRP; which are secured by Executive Order 13107.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants who retaliate against her by stalking her and her relatives interstate and conspiring to injure her and her relatives because she exercised her rights as a human being and as an employee who objected to being sexually harassed in the work place by another employee and because she objected to the Defendants illegal, unlawful, and unfair employment practices and filed a complaint with New York City Commission of Human Rights which are protected activities.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Petition, Complaint, Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants and their conspirators who retaliated against her by stalking her and her relatives interstate in violation of Title 18 USC 2261A and, for the premeditated murder of her father which is also a hate crime in violation of Title 18 USC 249, He was also a victim and a witness to this crime that's being committed by the Defendants and their criminal accomplices /conspirators against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party which includes the wrongful premeditated deaths of some of her other relatives interstate.

The nature of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured

Party's Verified Petition and Complaint that contain Causes of Action, Grievances and Claims for which relief could be granted is to recover compensatory, punitive, pecuniary, special, and collateral damages from the defendants and their conspirators who retaliated against her by acting under color of law, office and authority by intentionally and criminally abusing their power to criminally trespass upon the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's and her relatives houses and effects, where they have a reasonable expectation of privacy, illegally and unlawfully installing hidden eavesdropping and surveillance equipment to stalk, monitor, record, eavesdrop, while illegally and unlawfully disseminating intimate images of them to the general public over the world wide web for entertainment, sexual gratification, profit and to degrade and dehumanize them without their knowledge and without their implied or expressed consent.  The Defendants are willfully violating the United States Constitution, Article VI, Section 2; Article IV, Section 4; the 1st , 4th, 5th, 7th, 8th, 9th, 10th Amendments, Title 18 U.S.C 2261A;  Title 18 USC 249;Title 18 U.S.C 1801; The Communications Decency Act codified as Title 47 U.S.C 230(5); Title 18 U.S.C 241; Title 18 U.S.C 242; The International Covenant Against Torture and Inhumane or Degrading Treatment or Punishment Part I,  Article 1,  Article 2 subsection 1, 2, and 3, Article 5, Sections (1)(a)(c),  2, 3; The Declaration of Right On Indigenous Peoples Articles; International Convention on the Elimination of All Forms of Discrimination Against Women; The International Covenant on Civil and Political Rights.

### COMPLAINT

The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, In Proper Persona, Sui Juris is a Moorish American, aboriginal and indigenous female who is over the age of 40 and a tenured employee who sustained physical injuries in the performance of her duties by an act of an inmate which is a direct and proximate result of her permanent

physical disabilities. The Plaintiff, who is in a protected class, was actively working in a qualified position as a Correction Officer and was constructively discharged in retaliation for objecting to being sexually harassed at work by Defendant Correction Officer, Aaron Scarlett which is prohibited conduct, and was discriminated against by her employer based upon her work and permanent inmate related physical disabilities, her national origin, sex/gender, age, and perceived disability. There's a direct correlation between the Plaintiff / Petitioner being discriminated and retaliated against and her suffering an adverse employment action. *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)*. Defendant Aaron Scarlett who was a Correction Officer, sexually harassed the Plaintiff in a conspicuous manner creating a hostile and offensive work environment where anyone would be offended which was known by the remaining Defendants who were the Plaintiffs and Defendant Aaron Scarlett's employers who intentionally failed to enjoin his prohibited conduct by intervening and enforcing Federal, State and City laws that prohibits sexual harassment and other prohibited conduct at work which infringes upon the rights of the Plaintiff / Petitioner. The remaining Defendants intentionally failed to exercise reasonable care allowing the work environment to become hostile and offensive in addition to retaliating against the Plaintiff / Petitioner for objecting to Aaron Scarlett's prohibited conduct by subjecting her to an adverse employment action, and depriving her relatives and intimate partner of their Constitutional and Human Rights by acting  under of color of law, office and authority to criminally trespass into the Plaintiff / Petitioners home, as well as the homes of her relatives and intimate partner to illegally and unlawfully install unauthorized surveillance equipment in their homes without their consent or knowledge, where they have a reasonable expectation of privacy. The Defendants intentionally record and disseminate intimate images of the Plaintiffs and her relatives intimate body parts entire breast, penis, vaginas, buttocks subjecting them to revenge

porn, sexually exploiting them without their implied or expressed consent or knowledge in retaliation for the Plaintiff objecting to being sexually harassed at work, sexual arousement, and for profit which is illegal, unlawful and criminal in nature and in violation of Title 18 USC 1801, Title 47 USC 230.   The Plaintiff, her relatives or intimate partner never consented to being sexually exploited or having their private property taken for or used for public use.  The Plaintiff learned that the Defendants were sexually exploiting her because she was being taunted at work about being sexually exploited by other employees whom she did not know and seeing a nude picture of herself stand in front of the bathroom mirror inside of her house on another employees cell phone who was sitting two seats in front of her on the route bus when she was going to work one morning.   The nonconsensual dissemination of graphic images colloquially called revenge porn may haunt victims throughout their life *Vermont v. Van Buren (Vermont Supreme Court 2016).* Harassment is violative of Title VII and is "Unwelcomed Conduct" based on sex, race, color, and national origin, it becomes unlawful when: (1) enduring the offensive conduct becomes a condition of continued employment: (2) The conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating hostile or abusive according to the United States Equal Employment Opportunity Commission.  Criminal cases such as the *City of New Port v. Fact Concerts 453 (U. S 247 S. Ct. (1981)* is still binding and *Carson V. Hudson 09-3514(6th Circuit 2011)* in comparison to civil complaints *United States v. Sayer, Ossinger, Petrovic* is imperfect graphic images dissemination without consent unites them.  The Second Circuit dismissal of such misconduct in this action which has less demands than a criminal diminishes the harm that other Circuits, and State Courts recognize. The Defendants who were and are not engaged in any investigation are acting under color of law, authority, and office by criminally abusing their power by willfully violating Title 18 USC 1801, Title 47 USC 230, and

Title 18 USC 2511 that prohibits the interception and disclosure of oral wire, wireless electronic communications which the Defendants and their criminal accomplices / conspirators willfully violated to further deprive the Plaintiff, her relatives, and past intimate partner of their rights by illegally and unlawfully intercepting and disclosing all of the Plaintiffs, her relatives and past intimate partners oral, wire, and wireless electronic communications to the general public without their expressed or implied consent and without their knowledge and is of no concern to the public. The Defendants intentional reckless, malicious, and retaliatory misconduct is causing the Plaintiff and her relatives significant, permanent, and irreparable injuries.

The Plaintiff/Petitioner, her relatives living and deceased are covered by the Provisions set forth and listed below in this Hybrid Petition and Complaint which the Defendants are willfully in violation of: The United States Constitution, The International Covenant On Civil And Political Rights (ICCPR), The United Nations Declaration Of Human Rights, The United Nations Declaration Of Rights Of Indigenous Peoples, The International Covenant Against Torture And Inhumane Or Degrading Treatment Or Punishment,  The International Covenant Of Economic, Social And Cultural Rights, The International Convention On The Elimination Of All Forms Of Discrimination Against Women,  The Declaration Of Basic Principles Of Justice For Victims Of Crime And Abuse Of Power, Titles 18 U.S.C 242, 18 U.S.C 241, 18 U.S.C 1983, 18 U.S.C 1981, 18 U.S.C 2511, 18 U.S.C 1589, 18 U.S.C 1584, 18 U.S.C 1961, 18 U.S.C 2261A, 42 U.S.C 12112(a), 42 U.S.C 12111(2), 42 U.S.C 12111 (5), 42 U.S.C 12111 (7), 42 U.S.C 2000e – 2000e17, New York Penal Laws 250.05; 250.30; 250.45; 250.50; 250.66; which prohibits their actions.

The Plaintiff overheard other employees whom she did not know talk about how the Defendants her employer conspired to file false charges against the Plaintiff in addition to already depriving

her of her rights and constructively discharging her by stalking her, impeding her rights to travel upon the roads and sexually exploiting her in retaliation for objecting to being sexually harassed at work by another employee.  The Plaintiff who is over the age of 40 and a tenured employee continued to work in an abusive work environment to mitigate her economic injures and to avoid being further injured by the Defendants who were already acting under color of law, office, authority and criminally abusing their power.

The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, Vicky Ware Bey, In Proper Persona, Sui Juris files this Summons and Hybrid Petition and Complaint for a redress of her grievances for intentional injuries inflicted upon her by the Defendants who intentionally and actionably discriminate against her in terms of employment based upon her sex/gender, national origin, age, occupational related disabilities, in terms of compensation, her status as a crime victim which is also occupationally related, whom the Defendants continue to retaliate against her for exercising her rights as a human being and as an employee who objected to being sexually harassed at work by a male employee, Aaron Scarlett who caused and created a hostile and offensive work environment that was so offensive that anyone in this situation would be offended.

The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party suffered an adverse employment action because she objected to being sexually harassed in the work place and for submitting a complaint about being stalked in retaliation for objecting to being sexually harassed, and filing a complaint about employment retaliation with the New York City Commission of Human Rights #, and she suffered an adverse employment action because she objected to being sexually harassed and because of the performance of duty injuries she sustained while interacting with an inmate during the performance of her duties which is the direct and

proximate cause of her occupational permanent physical disabilities which is another basis for the Defendants acts of  intentional and actionable discrimination against her.

The Defendants who are retaliating against the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party for objecting to being sexually harassed at work are acting with complete malice towards her and her relatives by misusing their employment positions, job titles, and employment related resources, training and affiliations to criminally abuse their power to intentionally and actionably discriminate and retaliate against Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party by depriving her and her relatives of their inalienable rights, human rights and their rights secured by the United States Constitution by intentionally criminally trespassing upon their personal private property, houses and effects, stealing documents and other personal items and effects from their houses while illegally and unlawfully installing hidden cameras and eavesdropping equipment inside of their homes where they have a reasonable expectation of privacy to stalk them with the intention of harming them while illegally and unlawfully monitoring, surveilling, recording and illegally and unlawfully disseminating intimate images of them to other employees at work and to the general public over the world wide web sexually exploiting them while making private facts public that is of no concern to the public without their knowledge and without their expressed or implied consent, to intentionally cause them irreparable and permanent injuries in retaliation for the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party exercising her inalienable rights, human rights and rights secured by the United States Constitution and objecting to being sexually harassed at work by another employee.  The Defendants criminal course of conduct towards the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party has not ceased.

The Defendants continue to retaliate against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party by invading her and her relatives privacy by illegally and unlawfully intercepting and disseminating all of their oral, wire, wireless, and electronic communication for the wanton purpose of stalking and oppressing them while intentionally making their private matters known to the public, which is of no concern to the public without their implied or expressed consent and without their knowledge and depriving the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party of material benefit such as employment, pension benefits that are not diminished and impaired, and arbitrarily and capriciously denying her a performance of duty disability pension in retaliation for her objecting to being sexually harassed at work by another employee in December 2014. The Defendants discriminatory and retaliatory actions have not ceased.

## STATEMENT OF FACTS

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party in this matter is an indigenous Moorish American National who was hired by the City of New York / New York City Department of Corrections that has approximately over 9000 employees on July 1, 1998, as a Correction Officer and became a member of the New York City Employee Retirement System herein after referred to as "NYCERS". The New York State Legislature enacted a program titled the "Twenty-year retirement program for New York City Corrections Members below the rank of Captain pursuant to section 503a and 503c of the Retirement and Social Security Law. This law provides that each member is entitled to receive a pension equal to fifty percent of their final average salary upon retirement with 5, 10, 15 and 20 years of credited service. The final average salary is defined as the average wages earned by the member during any three consecutive years which provide the highest average wage (Retirement and Social Security Law 512a) which the

Petitioner participated in.

During the year of 2001 the Petitioner was physically injured by an inmate during the course of her duties at work and was taken to the hospital and received 3 stitches to her right dominant hand for a laceration that was inflicted upon her by an inmate which impeded her ability to utilize her right hand.

On July 2010, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party sustained inmate and work related physical injuries during the course of her duties upon responding to an activated alarm for an inmate disturbance in the Annex Vestibule as part of a response team.  Upon the Petitioner arriving to the area the Inmate was violent and had to be restrained during this emergency situation, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was injured while attempting to restrain a non compliant inmate and attempting to apply mechanical restraints.  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party sustained injuries to her right shoulder, right arm and permanent injuries to her lumbar spine and was immediately seen in the facility clinic for medical attention followed up by various physicians for ongoing treatment and physical therapy for these occupational injuries she sustained during the performance of her duties while interacting with an inmate.  As a result of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's performance of duty injuries she applied for disability retirement and was denied by N.Y.C.E.R.S and continued to work injured.

On May 2013 the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was involved in a use of force inside of the Main Clinic and was taken down to the floor with a non compliant inmate injuring her sacral and lumbar spine, left leg, and knee.  All inmate and work related injuries the Petitioner /Plaintiff sustained are attached and described in exhibits.

Upon the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party reaching her 10th year working for the New York City Department of Corrections Aaron Scarlett was hired by The New York City Department of Corrections as a Correction Officer.  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party had a relationship with  this individual prior to being employed by the New York City Department of Corrections and had been completely estranged from Aaron Scarlett for 10 years and she didn't have any contact with him nor did she see him until he was hired by the City of New York / New York City Department of Corrections.  Aaron Scarlett saw the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party at work and wanted to get reacquainted with her, he gave her his phone number. The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party contacted him via text message only one time and questioned him about an act he committed against her in 1998. Aaron Scarlett sent a text back to the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party stating she had the wrong number.  The next day the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party saw Aaron Scarlett at the Samuel Perry Building where the route buses load and unload employees on her way to work and he was angry that she had confronted him about his past actions against her, she did not say anything to him and boarded the route bus #5 and went to her assigned facility to work, the Otis Bantum Correction Center, and completely avoided him and never spoke to him again.

Aaron Scarlett feared that the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party would expose his past deeds against her.  In 2009 he began to sexually harass her by spreading rumors about her at work to intentionally discredit her and to cause a hostile and offensive work environment while intentionally drawing the unwanted attention of male employees towards her in a loud conspicuous manner.  During this time the Plaintiff was able to

endure his tactics because she did not see him every day.

May 2013 the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's schedule and assignment at work had changed.  She would see Aaron Scarlett daily just about every morning on the route bus where two routes would often be combined (route 3 and route 5).  Aaron Scarlett was assigned to work at the Transportation Division where route bus #3 is assigned to drop off employees who worked at the Transportation Division and North Infirmary Command, which route should have remained separate from the route #5 and taken him to his assigned facility.  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was assigned to work at the Otis Bantum Correctional Center where route bus #5 is assigned to drop off employees who work at the Otis Bantum Correctional Center and the West Facility. Route #3 and #5 are two separate routes that are not supposed to be combined which enabled Aaron Scarlett to harass the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party even more.

Aaron Scarlett's hostile sexually harassing conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was blatant and known by other employees and her employer who remained recklessly indifferent and intentionally failed to stop and discourage his unwelcomed and unwanted hostile sexually harassing course of conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, which the Defendants who are her employers are obligated to enforce federal and State Laws in addition to complying with OSHA standards to protect all employees and provide a safe working environment.

Aaron Scarlett intensified his hostile sexually harassing conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party in this matter and continued to spread rumors about her at the Transportation Division where he was assigned to work causing a hostile

work environment for the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, causing other employees at work to treat her incongruently because of the sexual nature of his harassment and false rumors he was spreading.  Aaron Scarlett's hostile sexually harassing conduct was done conspicuously and was already known by the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's employer who are named Defendants in this action.

Route bus #5 was designated to take employees to and from the Rikers Island Control Building to the Otis Bantum Correctional Center and then to the West Facility. Route bus #3 was designated to take employees to and from the Rikers Island Control Building to the Transportation Division and the North Infirmary Command, most of the time or during the early morning hours route buses #3 and #5 would be combined.  When both rout buses were combined, the route bus would first stop at the Transportation Division where Aaron Scarlett was assigned to work and upon Aaron Scarlett exiting the route bus, he would intentionally draw unwanted attention of other male employees towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party pointing at her after talking about her and spreading false rumors about her to other male employees.  Aaron Scarlett would get off the bus and if the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was sitting in the middle of the bus, he would yell to other male employees at the Transportation Division and point at the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and say "Look that's her, she's in the middle"  or if the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was sitting in the rear of the bus he would do the same.

Aaron Scarlett's hostile sexually harassing course of conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party produced a hostile working environment,

causing other employees whom the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party did not know and never had any problems with to act hostile towards her, to harass her as well as sexually harass her.

On or about Friday, December 12, 2014, Aaron Scarlett's ongoing hostile sexually harassing conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was bought to the attention of, Joseph Ponte who was the Commissioner for New York City Department of Corrections .

On the same day Aaron Scarlett's ongoing hostile sexually harassing conduct towards the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was bought to Commissioner, Joseph Ponte's attention the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party noticed two Hispanic females across the street from her house after she had arrived home from work taking pictures of her house.  Immediately, thereafter the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party began to get stalked in retaliation for objecting to Aaron Scarletts unwelcomed sexually harassing conduct towards her by other employees whom she did not know, and she had never seen before.

Saturday, December 13, 2014 the Plaintiff noticed a vehicle sitting outside of her house with two black males scoping out her residence.

Monday, December 15, 2014, at approximately 0300 hours, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party noticed a black Hummer circling around the neighborhood in the vicinity of her house prior to her leaving for work.  Monday, December 15, 2014 at approximately 04:00 hours, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party pulled out of the driveway in her vehicle traveling towards East Neck Road to go to work and noticed two images in her rearview mirror of two males walking in the dark towards

her house, which was unusual for this time in the morning. The Plaintiff made a u-turn and traveled back in the direction of her house at which time a black Hummer pulled up across the street from her house and the two individuals who were walking towards her house ran towards the passenger side of the Black Hummer to get into the vehicle. As the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party passed by the vehicle she recognized Aaron Scarlett as one of the individuals who was accompanied by another male who was approximately 6'2, 190 lbs, brown skin with a bald head.

Tuesday, December 16, 2014, the Plaintiffs vehicle was parked in the East West Parking lot on Rikers Island and someone had slashed and flattened the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's tire in retaliation.

 Wednesday, December 17, 2014 the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was leaving work and a non-uniformed employee who was assigned to work at the Transportation Division was riding on the bus in the front seat located behind the bus driver and in front of the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was laughing and zipping and unzipping his zipper for the entire duration of the ride from the Otis Bantum Correctional Facility to the Main Control Building on Rikers Island known as the Samuel Perry Building.

Tuesday, December 30,  2014, at approximately 1435 hours the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party left work departing from the Otis Bantum Correctional Center boarded the route bus and as she sat down the bus began to pull off and she heard the bus driver make (2) radio transmissions to the Transportation Division "Route 5 to ambulance 3 that package is on the bus"  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and two other employees were on the route bus, one employee got

off the route bus at the West Facility.   Upon the bus heading back towards the Main Control building the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party noticed that the bus began to significantly slow down until Aaron Scarlett was in plain sight walking from the Transportation Division crossing the street in front of the bus where the bus would stop outside of the North Infirmary Commands Gate.   Aaron Scarlett boarded the bus and sat in close proximity to the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party.   Besides the Plaintiff and Aaron Scarlett there were three other employees on the bus whom the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party did not know.   Upon the route bus arriving at the Main Control building the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party exited the bus walked through the Main control building and entered the East /West Parking lot and retrieved her vehicle.   The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party approached the security booth in her vehicle located on the Riker Island side of the bridge Aaron Scarlett was sitting inside of a White Jeep Grand Cherokee lying in wait and waiting for her to pass by, at which time the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party did not see Aaron Scarlett or his vehicle on this side of the Parking lot.   As the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party approached the security booth and stopped for a security check upon departing Rikers Island, Aaron Scarlett immediately pulled up closely behind her vehicle, and waited for the Correction Officer to complete his security inspection of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's vehicle.   Aaron Scarlett immediately began to speed across the bridge catching up to her and then tailgating her onto Hazen Street,  to 19th Avenue and then on to 81st Street where she would normally head east on the Grand Central Parkway until the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party made a maneuver in

traffic to get away from Aaron Scarlett.  Immediately, after this incident occurred the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party had called the Wardens Office at the Otis Bantum Correctional Facility where she was assigned to work and notified the Warden of what had just transpired.  Nothing was done and the retaliation which came in the form of stalking continued, and other employees began to collectively join in on the retaliation which quickly turned into coordinated stalking / organized stalking which quickly spread into the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's neighborhood.

Wednesday, December 31, 2014, after the incident that had occurred the prior day, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party debated going to work, and went to work later, upon arriving on Ditmars Blvd she saw Aaron Scarlett in his vehicle leaving from Rikers Island driving towards the Grand Central Parkway heading towards Brooklyn /Staten Island.

Thursday, January 4, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party noticed a Hispanic woman driving a black Honda Civic circling around the East/West Parking lot on Rikers Island looking for the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's vehicle.  The Plaintiff hurried out of the parking lot in her vehicle to get away from this employee who was stalking her whom she did not know.  While the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's trunk was getting inspected by a Correction Officer at the Security Booth, the woman in the black Honda civic caught up to the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and followed her closely onto the Grand Central Parkway heading east bound and then onto the Long Island Expressway eastbound.  The Plaintiff / Petitioner / Claimant / Crime Victim /

Aggrieved and Injured Party had to drive in a manner to lose this person in traffic.

Friday, January 12, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was departing from work and was on the route bus # 5, and heard the driver made (2) radio transmission to another party "ETA 22 seconds" he was letting another party know that the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party would be arriving at the control building within seconds.

During the month of February 2015 the Plaintiff noticed a huge increase of traffic in the area she lived in and especially on the block she lived on.  Multiple vehicles (mostly the same vehicles) would travel up and down the block and park on South 30th Street and watch the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's house all day while lying in wait.

Sunday, March 1, 2015, between 1300 - 1500 hours the Plaintiff was trying to clear snow out of her drive way and a black Tahoe bearing license plate # FJK1587 which was one of the vehicles that had been circling her neighborhood stopped in front of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's house.  The operator of the vehicle sat there for 3-5 minutes with dark tinted windows staring at the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party.

Monday, March 2, 2015, at approximately 1600 hours the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party arrived home from work and found foot prints in the snow from the front of the garage going to the rear of her house.  Police report  # 2015-0158128 for stalking was filed and issued.

March 9, 2015,  the number of vehicles that had been circling around the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's house increased and the stalking

became more organized and significantly worse.

March 19, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party left work and was on the route bus and noticed the route bus driver texting on his phone before departing from the Otis Bantum Correctional Center. When the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party arrived in the East West parking lot she noticed a vehicle bearing plate # DNL6122 was waiting by her vehicle, this employee whom she did not know followed her all the way home from Rikers Island.

March 27, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party found and old police report and texted an image of it to her friend. On the same day the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was followed into the Wyandanch Post Office by two males one was black and the other was European or of Hispanic descent. The European or Hispanic person approached the counter in the Post Office and gave the clerk a piece of paper and did not any mail or receive any mail from the postal clerk at the counter in the Post Office.

Friday, April 3, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was followed from her house to East Elmhurst by multiple vehicles. The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party went to talk to the Union President at the Satellite Office located in East Elmhurst, New York about what had transpired at work and about being stalked in retaliation for objecting to being sexually harassed at work. The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was seeking to find a quiet and private resolution to this ongoing problem. Upon the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party returning home from meeting with the Union President, she was traveling in her vehicle down South 31st Street in Wyandanch and observed a Hispanic male,

approximately 5'7, 175 lbs with black and gray hair standing across the street from his Gray Honda Passport talking to a motorist who was parked on the side of the street with a false accusatory instrument in his hand with her picture on it as the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party drove past this individual and continued to drive avoiding a confrontation.

May 19, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party sent a complaint to the New York City Commission of Human Rights via email complaint # 1-1-1104660386 was issued by the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party nothing was done.

May 19, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party notified Patricia LeGoeff the Assistant Commissioner for the Equal Employment Opportunity Office within the New York City Department of Corrections via email that she was being retaliated against and had become a stalking victim.  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was told that her complaint was being handled by the New York City Commission of Human Rights.   The Assistant Commissioner for the Equal Employment Opportunity Office within the New York City Department of Corrections, Patricia LeGoeff was still obligated to investigate the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's employment related complaint and stop the employment retaliation.  Multiple incidents continued as the work related retaliation continues in the form of "Organized Stalking".  November 2015, at approximately 1600 hours the Plaintiff had a meeting with Commissioner Joseph Ponte in an attempt to resolve the ongoing work-related retaliation that comes in the form of coordinated stalking / organized stalking which has not ceased and continues to go on.

December 21, 2015, at approximately 1800 hours the Plaintiff / Petitioner / Claimant / Crime

Victim / Aggrieved and Injured Party submitted a written Unusual Incident Report / Complaint regarding employment retaliation that comes in the form of criminal harassment, home invasions and Coordinated Stalking / Organized Stalking which affects the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's relatives.

December 23, 2015, at approximately 1000 hours the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was ordered by Deputy Warden Karen Lewis to report to the New York City Department of Corrections Health Management Division. The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was barred from employment and involuntarily put out on sick leave for submitting as report pertaining to employment retaliation, and her current status as a crime victim which is occupationally related and the fact she felt her life was in danger and requested help from her employer who placed  her out on sick leave as a way of hastening the Defendant's constructive discharge of the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party by using public policy.  The Defendants used their knowledge of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's performance of duty injures she sustained while interacting with an inmate which is the direct and proximate cause of her physical disabilities and made it impossible for the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party to return to work.   The Defendants discriminated against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party based upon her performance of duty disability by demanding that she produce medical documentation stating that she is able to work in full capacity as a Correction Officer already knowing that she had sustained permanent injuries in the performance of her duties while interacting with an inmate which are the direct and proximate cause of her occupational related disabilities / performance or duty disabilities, while intentionally attempting to discredit the

Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party by sending her to the Health Management Division for falsified psychological reasons to discredit her, and to hide the crimes the Defendants and their criminal accomplices / conspirators are committing against her and her relatives. The Defendants conspired and used this tactic to aid their constructive discharge of the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party. NEW YORK CITY DEPARMENT OF CORRECTIONS barred the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party from employment under the guise of sick leave where she was involuntarily placed out of employment and prohibited from returning because of her performance of duty disabilities she sustained while interacting inmate at work which the Defendants are in violation of Title 42 USC 1983. The CITY OF NEW YORK and NEW YORK CITY DEPARTMENT OF CORRECTIONS are liable for the Plaintiffs loss in credited service, because of their discriminatory actions. *KA Radiologic Tech. Servs., Inc. V. Commissioner of the Dept of health, 189 F 3d 273, 280 (2d Cir. 199), Blessing V. Freestone, 520 US 329, 340 117 S. Ct. 1353, 137l. Ed. 2d569 (1997)*. The Defendants discriminated against her because of her sex, gender/ age, work related physical disability and claimed to have perceived her as having an occupational mental disability. The Petitioners employer who are the Defendants in this matter had knowledge of the Petitioners occupational and inmate related injuries she sustained during the performance of her duties at work, which are the direct and proximate cause of her physical disabilities. The Defendants wantonly used their knowledge of the petitioners occupational disabilities to deprive her of employment for the intentional purpose of causing her severe economic injuries while tortuously interfering with her pension benefits causing it to be impaired and diminished, as well as causing her to be arbitrarily and capriciously denied a performance of duty disability pension as an injured employee.

December 24, 2015, the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party had to report to the New York City Department of Corrections Headquarters to have her Identification Card changed to not having a firearm after she informed her employer that she and her relatives are being stalked in retaliation for her objecting to being sexually harassed at work, in addition to informing her employer that her home was invaded and criminally trespassed upon and  that she felt her life was in danger.

In addition to the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives and loved ones being stalked, and terrorized in retaliation for her objecting to being sexually harassed at work her life was threatened there was a small sign was placed in the ground when she was traveling to a relatives house that said "You shall live, for now".   An employees life or the lives of their relatives should not be in danger just because an employee objects to being sexually harassed in the workplace, nor should abuse be a condition of employment.

On or about January 29, 2017, the Defendants constructive discharge of the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party had been finalized.  The Defendants classified the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party classified her as being medically discharged pursuant to Public Officers Law 71 and 73 because of these same injuries the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party sustained during the performance of her duties while interacting with an inmate which are the proximate case of her physical disabilities.   Prior to the Petitioner being constructively discharged from employment because her work and inmate related injuries that resulted in her physical disabilities she applied for disability retirement at N.Y.C.E.R.S which she is covered by and eligible to receive pursuant to the Retirement and Social Security Law Article 14, Section 507a

and 507c as a Tier 3 Member.  The Petitioner was arbitrarily and capriciously denied a performance of duty disability retirement by N.Y.C.E.R.S without regard to her injuries and in error of law because of the tortious interference of staff members from NEW YORK CITY DEPARTMENT OF CORRECTIONS interfering with staff members from N.Y.C.E.R.S, impeding their ability to properly perform their duties causing the Petitioner to suffer additional economic injuries because of their unlawful inducement causing N.Y.C.E.R.S to breach fiduciary duties.   New York Constitution provides protection as 'a contractual relationship' the benefits of membership in a public pension or retirement system against diminishment and impairment. The provision 'fix[es] the rights of the employees at the time of commencement of membership in [a pension or retirement] system, rather than as previously at retirement." B*allentine v Koch (89 NY2d 51, 56 [1996]). As the Court of Appeals stated in (Matter of Guzman v New York City Employees' Retirement Sys., 45 NY2d 186, 190-191, citing Birnbaum v New York State Teachers Retirement Sys., 5 NY2d 1, 9),* and thus prohibits unilateral action by either the employer or the Legislature that impairs or diminishes the rights established by the employee's membership. *Matter of Village of Fairport v Newman, 90 AD2d 293, 295, appeal dismissed 58 NY2d 1112."*

July 2017, the Defendants and their criminal accomplices / conspirators damaged the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's vehicle while it was parked on the street.  While the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was away from her vehicle the Defendants and the criminal accomplices / conspirators intentionally and forcefully backed into her vehicle smashing the front grill and bumper, causing her to have to get body work done to her vehicle and causing her to loose use of her vehicle for several days which caused her to have additional expenses of having to rent a vehicle. Police report # was generated.

2017 the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's uncle who was in a nursing home and rehabilitative center was always upset and passed away.

December 2017, the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's sister in law who lived in another state suddenly passed away.

July 1, 2018, the Petitioner was eligible to receive regular retirement benefits in the amount of 3987.53 per month.  The Respondents in this matter intentionally breached their fiduciary duties concerning the Petitioner by intentionally impairing and diminishing her ordinary pension because of the intentional and malicious, tortious interference of the Petitioners employer NEW YORK CITY DEPARTMENT OF CORRECTIONS  that operates under the auspice of CITY OF NEW YORK.  The Petitioners employer NEW YORK CITY DEPARTMENT OF CORRECTIONS illegal and unlawful malicious tortious interference caused the breach of contract which deprived the Petitioner of her material benefit and her constitutionally secured rights provided by the New York State Constitution Article 5 Section 7 causing her emotional anguish, distress and additional economic damages.  The Respondent(s) collectively and intentionally violated the following provisions the Plaintiffs rights pertaining to the Correction Officers Benevolent Association Collective Bargaining Agreement Article X, Section 1, and 2; , Article XXI, Article XXIV, the United States Constitution, New York State Constitution, The Treaty of Peace and Friendship, The Universal Rights on Indigenous Peoples, Universal Declaration on Human Rights.  Upon the Petitioner becoming eligible to receive regular pension benefits the Respondent(s) refused to pay her the correct pension amount after being notified privately and in a good faith by the Petitioner on numerous occasions in an effort to resolve this matter verbally, and in writing via email and certified mail return receipt requested on the following dates August, September, October, November 11, 2018, December 4, 2018, prior to this proceeding.

The Petitioner had submitted an option package to the Respondents on numerous occasions because the respondents kept requesting it pretending not to get it.  The Petitioner notified the Respondent(s) of diminished impaired retirement benefits in person and in writing clearly stating that she was being under paid in her regular retirement pension benefits that were incorrect since July 2018, the Respondents have not made any effort to correct it.

February 2019 the Plaintiff received a letter from the Respondents stating "We have not received your Option Package If we do not receive it within twenty days from the Date you partial pension benefits of 2868.00 will be discontinued indefinitely."

The Respondents intend to breached their contractual obligations and fiduciary duties even further.  The Plaintiff also reminded the Respondents that her earnings from the last three consecutive years was 99,900.86 ; 97,269.63 and 89,935.17, and that her average wages are 95,701.88 per year (w2 forms are exhibited),  which means her regular retirement benefits are $ 47,850.44 annually, and $3,987.53 monthly which excludes longevity pay and Cost of Living Allowances.  The Petitioner further informed the Respondent(s) that she was being was deprived of $1,119.63 per month since July 2018 in regular pension payments in addition to being wrongfully denied disability pension benefits which she is eligible for in the amount of $71,776.41 annually and $5,981.37 monthly excluding longevity pay which the Petitioner has already been wrongfully deprived of.  The Petitioners W2 Forms demonstrates the diminishment and impairment of the Petitioners pension benefits  which violates the pension impairment clause of the New York State Constitution and is the prevailing factor in this case along with proof that the Defendants classified the Petitioner as being medically separated under public laws 71 / 73 while prohibiting from returning to work because of work and inmate related injuries which they have records of and refuse to produce the documents the Petitioner requested prior to this action.  The Petitioners medical records, the

Respondents medical separation determination, substantiates proof that the petitioners claim that the Respondents are in violation of the pension impairment clause of the New York State Constitution specifically Article V, § 7. *Gagliardo v. Dinkins, 89 N.Y.2d 62, 72 (1996), quoting Poggi v. City of New York, 109 A.D.2d 265, 269 (1st Dept. 1985).* Furthermore, RSSL § 507–c provides: "Any member ... New York City department of correction, who becomes physically or mentally incapacitated for the performance of duties as the natural and proximate result of an injury, sustained in the performance or discharge of his or her duties by, or as a natural and proximate result of, an act of any inmate ... shall be paid a performance of duty disability retirement allowance equal to three-quarters of final average salary." The legislative history of RSSL § 507–b reveals that "the statute was clearly intended to compensate correction officers who, because of the risks created by their daily contact with certain persons who are dangerous ... become permanently disabled." *Mtr. of Laurino v. DiNapoli , 132 A.D.3d 1057, 1058, 17 N.Y.S.3d 792 (3rd Dep't 2015).*

The Petitioner also appeared in person at NYCERS on December 11, 2018, and dates prior to this regarding this same matter. The Respondents decisions and actions are in violation of Article 14 of the Retirement and Social Security Law, the United States Constitution, and various Treaties that are recognized by the United States Constitution, New York State Constitution.

The Respondents are in violation of the pension impairment clause of the New York State Constitution which provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired. NYS Constitution, Article V, § 7. This provision "provides valued safeguards for public employees against the diminishment or impairment of pension rights which

are fixed and determined by the laws and conditions in existence at the time membership in the pension system commences". *Civil Service Employees Assoc. v. Regan, 71 N.Y.2d 653, 656 (1988).* The constitution prohibits any diminishment or impairment of retirement benefits and 'prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement under laws and conditions existing at the time of . . . entrance into retirement system membership'". *Civil Service Employees Assoc. v. Regan, 71 N.Y.2d at 658, quoting Birnbaum v. New York State Teachers Retirement Sys., 5 N.Y.2d 1, 11 (1958).*

March 2019 the Petitioner received a letter from NYCERS stating that she must submit an option package or her partial pension benefits of $ 2868.00 will be discontinued indefinitely and will not be changed.  The Petitioners pension is already diminished and impaired and the Respondents now seek to diminish and impair it in its entirety.  The Petitioner who is aboriginal, indigenous Moorish American mailed a copy of another options for 100% survivorship via certified mail return receipt to Melanie Whinnery at NEW YORK CITY EMPLOYEES RETIRMENT SYSTEMS AT 335 Adams Street, Brooklyn Territory, New York Republic [11201] on March , 2019, and on March 11, 2019 personally appeared at NYCERS located at 340 Jay Street, Brooklyn Territory, New York Republic [11201] and submitted another option form along with my beneficiaries birth certificate after submitting it multiple times in the past.  While the Petitioner was at the customer service counter she was asked for Identification and under threat, duress, and coercion she produced a State Identification Card because NYCERS does not recognize the rights of indigenous peoples and are in violation of United States Constitution and the New York State Constitution.  During this encounter the Petitioner was verbally told by the Customer Service Representative that her pension benefits would be diminished and impaired even more to deter her from selecting the

100% Joint and Survivorship Option, the Petitioner took her time stamped receipt and departed N.Y.C.E.R.S.

The Petitioner has not waived any of her rights, inalienable or human or her rights that are secured by the United States Constitution that is continuously and willfully violated by the Defendants.

November 27, 2019, Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was traveling back to her father's house upon visiting him in the nursing home / rehabilitation center he was temporarily receiving care at and one of the Defendants criminal accomplices / conspirators made death threats against her father on the highway by taunting her with a blue hurst, ( the top was dark blue and the bottom was light blue).

December 10, 2019, Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's disabled father who was a stalking victim and a witness to this crime was assaulted and sustained physical injuries in the nursing home he was receiving care from causing his death 1 hour after the incident where he was pronounced dead in the hospital he was taken to for emergency care, and 14 days after the death threat on the highway.

The Defendants have and are committing a multitude of crimes against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives in retaliation against her because she objected to being sexually harassed in the workplace by another employee.  The crimes that are being committed against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives are acts of terrorism called " Coordinated Stalking", "Organized Stalking", "Gang Stalking" these terms are used synonymously.  Their senseless acts of violence and terrorism also has an adverse effect on others.

This is the testimony of the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party in this matter.  These are the stages of this crime against humanity and its terroristic factors committed against her and her relatives.

1.      **Initial Covert stalking occurs** without the victim knowing they are being followed and

stalked and their oral wire and wireless electronic communications are being intercepted and disseminated by these Rogues and criminals which will gradually increase as they eavesdrop on the victims private conversations and communications.

2.   **Character Assassination occurs through libel, slander and defamation** false rumors are started about the victim by these rogues and criminals who understand propaganda and half lies to coerce other people into participating into discriminating against the victim and stalking the victim.   The perpetrators of this crime use different methods of propaganda to discredit the victim and to hide this organized crime. The organizers of this crime go to the victims neighbors, co workers, past classmates, relatives and small business owners who are located in close proximity to where the victims lives , works or goes to school and spread false rumors presenting the victim in a false light to solicit other individuals into assisting the aggressors with stalking the victim and bringing information back to them about the victim while the aggressors deceive them and exploit them the same way they exploit the initial victim.   During the early stages of this crime the Plaintiff personally witnessed a  person with a false accusatory instrument with her picture on it showing it to local residents in her neighborhood who were also participating in stalking the Plaintiff and her son.   The perpetrators of this crime can never be trusted they spy and exploit the same people who they solicit to help them commit crimes against their intended victims who are innocent people.   During this phase of this crime the criminals who organize this crime actively and aggressively present the victim in a false and negative light, and use slander and libel turn people against them by making inciteful statements through different settings. The victim is unaware that this is being done to them while lies are being spread about them.   The victim is usually mistreated, discriminated against and doesn't understand why people are turning against them or mistreating them. Most of the time it occurs with individuals whom they never had a problem with.   Slander is the key component of this organized crime.

3.   **Isolation** is the goal of the second stage in this organized crime.   The coordinators and perpetrators of these crimes are usually seasoned criminals who have already victimized many other people and who aggressively try to isolate their victims so that they can commit a multitude of crimes against the victim without it being noticed or detected, and if the victim complains about crimes being committed against them it's a high probability that their complaint might be disregarded because of the character assassination of the victim that occurs in the previous stage of this crime that is intentionally done by the Coordinators of this crime who are also perpetrators of this crime through the use of libel and slander.

4.   **Recruitment occurs**.   Once the second step is established and the victim is presented in a false and negative light, people are solicited in participating in this crime because they deceived into believing they are doing something  benevolent because the perpetrators of this crime misuse their employment status and titles and criminally abuse their power by acting under color of law, office and authority to deceive the public and get them to participate in this organized crime against their victims to intentionally cause public and private injuries. There are some individuals who also impersonate being law enforcement to carry out this crime.   **Many people are not aware that they are participating in an organized crime called "Organized Stalking", "Coordinated Stalking", and "Gang**

**Stalking", these terms are used interchangeably .**   Some people who knowingly participate in this crime because they are criminals like the organizers of this crime, and some individuals do it because they need money and are bribed with gift cards, store discounts, petty cash, home improvements, cars, houses, promotions in employment, or some type of favor which would be granted through participating crime syndicates. This crime is known by multiple names: "Organized Stalking", "Gang Stalking", "Cause Stalking", "Coordinated Stalking" and most recently " Havana Syndrome".   This recruitment process becomes more advanced and multiple syndicates are involved in this organized crime.  If they are not involved in this organized crime they are recruited through bribes or infiltrated.

Syndicates are groups of professionals such as Doctors, Nurses, Psychologists, Morticians, Electricians, Locksmiths, Carpenters, IT Specialists, Intelligence Officers, even entry level workers such as janitors,  etc.

5.      **Stalking increases and becomes more organized**.  People lay in wait in close proximity to the victims home, school or job and follow the victim everywhere they go.   The perpetrators of this crime intentionally cause traffic jams just to inconvenience or cause the victim to be late and lose opportunities. Once the victim arrives at their destination the first phase of this crime is repeated at that location and in the surrounding areas the victim frequents.  The victims of this crime are stalked by people who are walking, riding bicycles, motorcycles, and driving cars.  The majority of the people who participate in this crime communicate with cell phones.

6.      **Victim is further discredited**.  When the victims complains about being stalked they are immediately discredited and called mentally ill by the perpetrators who initially used slander to discredit the victim and to solicit others into participating into stalking and into committing crimes against the victim.  The victim is consistently discredited to conceal the perpetrators intentional criminal course of conduct against them.

7.      **Invasion Occurs**.  The perpetrators of  this crime criminally trespasses upon the victims personal property, invading the victims home after watching the victim over a period of time, learning their schedule after the recruitment phase so that they could easily access the victims home with the assistance of the of the unsuspecting people the solicited into participating in this crime who informs the perpetrators when the victims are not at home so that the perpetrators can break in, steal, install surveillance and eavesdropping equipment to stalk, monitor, record and disseminate and furnish illegal and unlawful recordings of the victim within their homes as well as intimate images of the victims without their implied or expressed consent or knowledge 24 hours a day.   While the perpetrators break into the victims home which becomes routine, the victim and other household members who have left their home are being stalked, tracked and followed by the perpetrators accomplices so that the perpetrators / intruders could get in and out before the victim or other members of the household return to their home. The individuals these perpetrators recruit to assist them in committing these crimes, are accomplices and accessories to the murders of the stalking victims and their relatives who are being illegally and unlawfully surveilled in places where they have a reasonable expectation of privacy. The criminals who perpetrate this crime have access to information that is not available to

the general public and use this information to track down the victims relatives and this same act is done to the victims relatives interstate without their knowledge or consent to stalk, degrade, and exploit them from within the privacy of their homes or in places where they have a reasonable expectation of privacy.  The perpetrators of this crime intentions are to harm the victims causing them permanent injuries.  The perpetrators of this crime intercept and monitor the victims mail, go through their trash and try to monitor their income and subject them to economic abuse like most abusers do.  The coordinators and perpetrators of this crime who all conspirators in this matter constantly steal from the victim to intentionally cause them economic injuries in addition to oppressing the victim while intentionally depriving them of their rights.

8.    **Illegal and Unlawful Electronic and Video Surveillance Abuse** takes place the Plaintiff/Victims homes are invaded surveillance and eavesdropping equipment is installed inside the victims home without their knowledge or consent and furnished to the public. All of the victims oral, wire, wireless electronic communications are intentionally intercepted and publicly disseminated where private and personal conversations are overheard and text messages are monitored through an SMS tracker and transmitted for the public to hear (this is accomplished by the use of certain software applications that has the capacity to listen to live calls, record calls, view call logs, VOIP call logs, VOIP call recording, and listen to phone surroundings upon activation, and record phone surroundings, activate the camera in the victims cell phone.  Some software has the ability to read SMS, and MMS messages and send fake SMS messages and delete SMS messages containing key words , read email., Spy on IM Chats, WhatsApp, Facebook/FB Messenger, Viber, Skype, WeChat, Imessage, BBM, Blackberry PIN, Yahoo Messenger, Hangouts, Telegram, Tinder, Instagram, QQ,  Hike.   Some software has the capacity to spy on Multimedia files (Video , Image and Audio). Some applications have the capacity to spy on screen shots, address book, calendar, notes, and look at Web pages viewed, and bookmarks.  Some software programs actually receive alerts when the sim card is changed, certain contacts are called through an alert wizard. Some software applications have the ability to capture and record keylogs the entire keystroke history of specified applications on a persons computer. Audio and Surveillance equipment are placed in the victim's home where the victims has the expectancy of privacy to stalk, monitor, record and disseminate unauthorized images of the victims to the public to intentionally dehumanized and degrade the victim / Plaintiff in this matter. The victims personal computer gets hacked into and they don't have any privacy on their computers or electronic devices and now these criminals have access to the victims whole life which they expose to the public without the victims knowledge or expressed or implied consent.  The criminals do this to the victim so that they could oppress the victim and suppress or deprive the victim of opportunities they worked for or used their creativity to get.

9.    **Sensitization and Street Theater occurs** this is a psychological attack on the victim. It's intended to inflict emotional distress and anguish upon the victim by triggering an emotional response from visual or auditory stimuli to intentionally cause the victim to become fearful, distressed, annoyed or to provoke the victim to anger**.** This stage is executed by individuals who are hired as **Surveillance Role Players.  Surveillance Role Players** are individuals who are hired to stalk the victim on foot, by car, bicycle, skate

board etc. and some are assigned to intentionally exhibit certain behaviors such as wearing certain colors, or have directed conversations towards the victim and around the victim that are intended to let the victim know their private information is been divulged to the public from the illegal and unlawful interception and dissemination of their oral, electronic wire, and wireless communications in addition to them being unlawfully and illegally surveilled in a place where they have a reasonable expectation of privacy such as their homes.  Some of these Surveillance Role Player will try to intimidate the victim by verbally threatening the victim with physical violence, attempting to sell the victim drugs to get them addicted to intentionally cause them other problems. Mobbing is also a tactic that is used on the victim. Mobbing is a term that is used when multiple people intentionally crowd a victim in a small area. There are also staged vehicular incidents and accidents.  Vehicular aggression is a tactic that is used to impede the victims right to travel upon the roads and highways.  This intentional infringement upon the victims right to travel is designed to irritate the victim, another example of this harassing conduct is that a person would intentionally sit in front of the victims vehicle at a green light for an extended period of time delay the victim from getting to their destination in a timely manner, stop individuals will intentionally stop abruptly in front of the victim to cause an accident,  some individual wo are part of this crime would attempt to run the victim off the road which happened to the Plaintiff on two different occasion once heading east on the Southern State Parkway in 2016, and Once heading West on Sunrise Highway.  A similar incident also happened to the Plaintiffs son.

10. **Infiltration occurs** after the victim has been stalked, studied and monitored by the perpetrators of this crime over a period of time, the perpetrators of this crime infiltrate the victims circle of friends and family so that they could get daily information about the victim.  The perpetrators of this crime are interested in how their victims are being impacted by the intentional injuries they inflict upon them causing them economic injuries and emotional distress and anguish.  The perpetrators of this crime are sick psychopaths who are entertained by the suffering of others and, get enjoyment out of inflicting injuries upon their victims and the victim's relatives and loved ones. The perpetrators of this crime also solicit individuals into befriending the victims or the victim's relatives, friends, co workers, business partners and associates or anyone who is providing a service to the victim or the victims circle for the purpose of causing the victim substantial injuries, breaking up the victim's family, marriage or to indoctrinate the victim their relatives, business partners, associates as a form of control.  The perpetrators of this crime stalk, monitor, and study the victim, their relatives, friends, associates to staying ahead of the victim for the despicable purpose of continuing to oppress the victim and to prevent the victim from getting away from these sick predators who are perpetrators of this crime.  If the victims considers seeking help and uses any of their oral, wire, wireless, electronic devices they have, which the perpetrators of this crime have already hacked, they will contact the victims source of help, and immediately infiltrate any organization, law firm that the victim considers seeking help from to keep the victim oppressed so that these criminals could keep abusing the victim as well as the victim's relatives for profit, entertainment purposes.  The perpetrators of this crime will infiltrate the organization through affiliations and befriend individuals whom work within the organization for the purpose of having influence over them and the organization preventing the victim from escaping from them so that they can

continue to abuse, exploit, injure and oppress the victim.  The perpetrators of this crime who have already hacked the victim's personal computers and electronic devices during the invasion stage and wantonly use their technology to monitor everything the victim does on their computer on or offline.  This includes cell phones, tablets etc., these criminals closely monitor and parasitically attach themselves to their victims so that they can prevent them from getting help whether it is in a social or judicial setting to keep the victim oppressed so that the perpetrators of this crime can keep exploiting and abusing the victim. The perpetrators of this crime also interfere with the victims electronic communication by blocking, limiting the victims communication to others to prevent the victim from advancing in life or to prevent them from just getting away from the perpetrators of this horrendous crime, they also use call spoofing to cause confusion or as a distraction. The perpetrators of this crime employs criminals to befriend their victims to learn the victims vulnerabilities and so that the victim would confide in them so that these criminals could abuse the victims even more. This crime also includes entrapment, framings and malicious prosecutions.

11.    **Social Engineering** is also a part of this crime where families and couples are intentionally broken up by the coordinators of this crime will get one of their perpetrators to start a relationship with the victim or the victims spouse, boyfriend or girlfriend to break them up. Some of these perpetrators go as far as marrying into the victims family while still following the instructions of the Coordinator of this crime to control the victims relatives while reporting back to the Coordinator of this crime, this is how low it gets. The Coordinators of this crime mainly target men for same sex relationships and same sex intercourse because it effeminizes them making them a less of a threat to their criminality and the individuals who they solicit to turn a heterosexual male into a homosexual male occurs during the infiltration stage of this crime.  The Coordinators of this crime infiltrate the victims circle and recruits the weakest person in their circle to betray and injure the victim, they usually start with the victims so called friend to injure them. The Coordinators of this crime usually get someone whom the victims already knows that is why they intentionally intercept and disseminate all of the victims and their relatives oral, wire, wireless, electronic communications to find out who their friends and associates are for the intended purpose of infiltrating and causing injury to the victim.  The Coordinators of this crime criminally trespass and invade the victims homes for the purpose of installing hidden eavesdropping and surveillance equipment to stalk the victims within their own homes as well as their relatives homes for the purpose of monitoring, recording and dehumanizing their victims by intentionally disseminating intimate images of them publicly without their knowledge or implied or expressed consent.  The coordinators of this crime misuse their education employment status and positions to commit these crimes.  The coordinators of this crime recruit, train and solicit potential perpetrators into converting a victim into homosexual for the purpose of destroying the victims life and as means of controlling the victim.  The Coordinators and perpetrators of this crime also records their heinous acts while they intentionally inflict injuries upon their victims for entertainment purposes, profit and sexual gratification.  The Coordinators of this crime records and disseminates their sick, perverse and unconscionable actions against the victim whom they intentionally inflict injuries on without the victims knowledge or consent they are also exploiting the perpetrator whom they solicited to commit the crime because they don't trust an individual

who would betray and subvertly injure their own friend and, just in case the perp develops a conscious and decides to be a decent human being, the Coordinators of this crime plans to blackmail them and use it against them. The victim does not realize what is happening to them or what has happened to them because they are groomed by the perpetrators who are instructed by their Coordinators / Handlers who are predators in this matter. Homosexuality a weapon that is used to injure and emasculate the victim. The coordinators of this crime go as far as soliciting the victims employer into constructively discharging them to cause the victim economic injuries because the victims employer is in a position of power over the victim and controls the conditions of employment. Some employers are already a part of this crime syndicate and are the initiators of the crime upon the victim who is unaware of it until it happens to them in the workplace. We also must be reminded that this crime is committed by multiple crime syndicates where psychologists and psychiatrists are also involved and assists these criminals in injuring their victims by (1) helping the Coordinators of this crime discredit the victim by intentionally misdiagnosing the victim as having psychosis, or diagnosing them with schizophrenia paranoia to immediately discredit them so that the criminal abuse could continue and , (2) Assisting the coordinators of this crime by using their educations to manipulate the victim psychologically whom they exploit for the purpose of control and inflicting the maximum amount injuries upon them which are lifelong injuries and permanent injuries because the victims is being exploited by these criminals without their knowledge or consent. Neurolinguistic programming is another method that are being used upon the victims by the coordinators of this crime who are also watching the perpetrators they employ to injure the victims. The perpetrators involved in this crime don't they are being watched tracked and traced with the same intensity the victim is by the solicitor and coordinator of this crime who is also deceiving them. The perpetrator gets the victim to confide in them and gains the victims trust and then gradually sexualizes their phony relationship and uses neurolinguistic programming to groom the victim for easy compliance from the victim just for the purpose of degrading, dehumanizing and devaluing the victim for entertainment purposes, sexual gratification, and monetary gain to intentionally inflict physical and emotional injures upon the victim while they are being sexually exploited by the perpetrators and their coordinators. The phony relationship is to make the victim a compliant victim without them knowing it and, its to get the victim to live a lifestyle they never lived before, which becomes an addiction to the victim and it gets the victim to engage in multiple high risk behaviors they would have never engaged in had they not become a victim of this well-orchestrated and organized crime, making the victim susceptible to deadly diseases. This is also another unconscionable and untraceable way of causing someone's death while ruining their lives. Social engineering is also used to promote genocide. Genocide is also part of this heinous crime that mostly targets so called minorities, even though this crime affects all nationalities and its a global problem that needs to be resolved and stopped for all of humanities sake, but it has to be addressed locally first with the known and exposed perpetrators. The purpose of this crime is to kill the victims without a trace and make their murders look like it came from natural causes whether it's an illness or disease caused and coordinated by this crime from the beginning. The coordinators of this crime are sick psychopathic predators and narcissistic individuals who lie in wait upon their victims.

Genocide is defined as the deliberate extermination of a people.  This deliberate act results in hate crimes and other tragedies intentionally inflicted upon people and targeted victims. Hate Crimes are crimes that are committed against people based upon their national origin, race and/ or the characteristics that identifies them as such.

The **Shepard Byrd Act also known as the Hate Crimes Prevention Act** was enacted in 2009 to prevent crimes against individuals solely based upon their nationality, national origin, race or sexual orientation.  The Hate Crimes Prevention Act is codified at **Title 18 U.S.C 249**.

<u>***Note:***</u> *James Byrd was a victim of a hate crime who was murdered Jasper Texas in 1998. He was tied to a truck by his ankles and dragged through the streets for approximately for over 1 mile on concrete until he was decapitated, and his limbs was torn from his body just because he was identified as an "African American", "Negro", "Colored".  He was subjected to this cruel crime based upon his physical Characteristics that identified him as such and deprived him of his human rights.  James Byrd had the right to live.*

<u>***Note:***</u> *Mathew Shepard was beaten, tied to a fence, set on fire and left for dead because he was a homosexual who was killed because of his sexual orientation in 1998.*

These crimes were perpetrated by individuals who have personal biases and prejudices. Everyone has the right to speak and have their own opinions which may include biases and prejudices but they don't have the right to infringe on the rights of others nor do they have the right to intentionally inflict injuries upon another human being nor do they have the right to deprive anyone of their human rights or their rights to life, liberty and the pursuit of happiness.

"Gang Stalking", "Organized Stalking" and "Coordinated Stalking" are serious crimes that include violent acts depicted in the above notes but are worse because the victims of this crime just doesn't suffer one or two events its an ongoing crime that affects the victim 24 hours a day 7 days a week and it includes a multitude of horrific abuses.  This crime is about power, control and constant abuse.  Its a controlled take down and slow undetectable kill of the victim by the criminals who conspire and perpetrate this awful crime, and some victims are used as experiments without their consent.

12.  **Pre Meditated Murder** and murder for hire is involved.  One of the purposes of this crime is to severely injure the victim and destroy their quality of life or to kill the victim or the victims relatives as well as witnesses to this crime who are not in agreement with the coordinators of this crime.

13.  **Sex Trafficking** is also connected to and involved in this crime.  Social engineering is the precursor to sex trafficking where the victims are befriended by the perpetrators of this crime after being stalked, studied, exploited, and sexually exploited by perpetrators who groom their victims either of the opposite sex or the same sex, manipulating their victims into thinking nothing is wrong with the behavior they were groomed and indoctrinated by their aggressors who are the perpetrators in this matter. The victim then adopts this

behavior as a lifestyle and is destroyed by the perpetrators grooming and manipulation which was aided and abetted by the coordinators who had the assistance of the psychologist and psychiatrist involved in their crime syndicates.

14.     **Directed Energy Weapons also referred to as "DEW"** are used on the victims of this crime to injure, torture or kill them without a trace and without being within close proximity to them.  Directed Energy Weapons varies in size and strength.  Some Directed Energy Weapons are large and are immovable and others are small, portable and, even handheld. Directed Energy Weapons are discharged through lasers which could be employed on individuals from long distances using microwaves, scalar waves and other electronic or magnetic pulses that causes bone damage and deterioration, strokes, brain injuries, heart attacks, external burns, eye injuries, tenitis, vertigo, radiation poisoning, and other ailments and injuries, both lethal and, non-lethal.   Directed Energy Weapons are used by the Military and in some Police Departments that have been militarized.  Directed Energy Weapons are used by lascivious individuals or groups of conspirators to assault crime victims without a trace because its stealthy and assaults could take place against the victim without being detected by others around them because it does not require close contact. Directed Energy Weapons are being used upon individuals who are crime victims without their knowledge or implied or expressed consent.  Directed Energy Weapons are more dangerous than firearms, it allows the aggressor to get away assaulting and killing the victim from a distance without sound or external injuries leaving no traces of deadly force that was used against the victim.  Directed Energy Weapons could be publicly employed on the victim and undetected by others who are in the immediate area whether its lethal or not.  The lethal capacity of DEW goes undetected because the victim will be diagnosed with a disease such as an ischemic stroke, congestive heart failure, or a heart attack or some other ailment.  If the victim has an underlying medical condition, it makes it easier for the perpetrators and the coordinators of this crime to get away with murdering innocent people who are crime victims in plain sight because their deaths would be attributed to an existing condition and not upon the assault that is being employed upon them by these undetectable weapons.  Most directed energy weapon that causes injuries to their victims whether its lethal or not are traceless and easily penetrates through walls and various materials and are silent and invisible to the eye. Victims of this crime are experimented upon without their knowledge or implied or expressed consent and some people are just tortured by unconscionable individuals who are part of the crime syndicates who commit these heinous crimes against humanity with stolen equipment and or unauthorized use of such weapons. The illnesses associated with the use of these directed energy weapons upon people are now know and associated with Havana Syndrome.  The use of these energy weapons was used on American Diplomats in Havana Cuba,  before this happened to them millions of people had been complaining about injuries inflicted upon them by directed energy weapons.

15.     **Ghosting** occurs this is a term that is used when the victims personal belongings are purposely taken and returned, or moved from one area of the victims home to another area to make the victim and others question their sanity.  The victim continues to experience frequent home invasions.

16.   **Sabotage occurs continuously** which is oppression and it comes in the form of obstructing justice, preventing the victim from getting help whether its legal, medical etc, as well as interfering in every aspect of a person's life, which includes framings, false accusations, presenting a person in a false light, and sexually exploiting the victim to intentionally cause them pecuniary and irreparable injuries causing the victims to be ostracized and ridiculed based upon what the perpetrators are doing to them against their will.

17.   **Death Threats** are continuously made to the victim and their relatives.

18.   **Acts Of Terrorism** all of the crimes above are used to intimidate, physically and emotionally injure the victims as well as injuring economically.  It involves the solicitation and coercion of other people into committing all of the above crimes against the victim including murder.  It includes the solicitation for support of the above acts of terrorism.

The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party is not only a victim of employment discrimination, retaliation, workplace violence, Interstate and international Stalking, and involuntary sexual exploitation, her and her relatives are victims of domestic terrorism and hate crimes.

**Note:**   ***Terrorism** is defined as activities that involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a and are criminal violations if committed and when its within the jurisdiction of the United States or of any State; Appear to be intended— (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (iv) occur primarily within the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the natural persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.*

The criminals who commit these crimes against their victims each and everyday get to live and breathe, the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's father as well as some of her other relatives and loved ones who are now deceased don't have that option anymore.   The Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's father was murdered to prevent him from testifying about this horrific crime that is being committed against the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives who are unaware of what is happening to them.

**CAUSES OF ACTION AND CLAIMS FOR WHICH RELIEF COULD BE GRANTED**

**FIRST CLAIM**

The Defendants intentionally discriminated against Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party based upon her  sex/ gender, national origin, and age in violation of Title 42 USC 2000e - 2000e-17 / Title VII of the Civil Rights Act of 1964, Title 42 USC 2000e-2; Title 42 USC 2000e-3 demonstrated by a preponderance of evidence  a prima facie case that (i) she is a female; (ii) she is over the age of 40; (iii) she was working in a qualified position: (iv)she is in a protected class; (v) she suffered an adverse employment action; (vi) and that the adverse action occurred in circumstances giving rise to an inference of discrimination. *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)*.  The Plaintiff was deprived of her human rights were disregarded because of her national origin, sex/gender, and age.   The Plaintiff proved she was discriminate against and retaliated against and suffered an adverse employment action in retaliation for objecting to unlawful, illegal and unfair employment practices and for objecting to being sexually harassed at work by another employee and filing a complaint with New York City Commission of Human Rights # 1-1-1104660386 which is a protected activity. The Plaintiff was constructively discharged and medically discharged by the Defendants.  The Plaintiff seeks relief in the amount of for $1,000,000.00 compensatory damages, $8,300,000.00 punitive damages, and $1,00,000.00 speculative damages a total of   $ 10,300,000.00 Ten Million Three Hundred Thousand Dollars for this claim as a redress for her grievances.

**SECOND CLAIM**

The Defendants discriminated against the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party based upon her occupational physical disability in violation of Title 42 USC 12112 and the Americans with Disabilities Act of 1990 demonstrated by a preponderance of evidence  a prima facie case that (1) she sustained permanent physical injuries at work during the performance of her duties while interacting with an inmate; (2) The Plaintiffs permanent physical injuries are a direct proximate cause of her permanent physical disabilities which she sustained during the performance of her duties; (3) The Defendants claimed to have perceived the Plaintiff as having mental disability and intentionally deprived her of employment after being employed over seventeen years; (4) The Plaintiffs terms of employment was changed  based upon her inmate related physical disabilities and perceived mental disabilities  (occupational disease); (5) The Plaintiff was working in a qualified position; (6) The Defendants discriminated against the Plaintiff based upon her work and inmate related permanent physical disabilities and perceived mental (occupational disease which was incurred by abusive employment practices stated in the Petitioners Complaint; (7)  The Plaintiff was barred from employment and prevented from returning to work because of her performance of duty disabilities which are permanent and the Defendants claim of perceiving the Plaintiff as having a mental disability which is occupationally related; (8) The Defendants classified the Plaintiff as medically discharged under  Public law 71 / 73;  (9) The Defendants are intentionally inflicting emotional distress upon the Plaintiff by subjecting her to financial abuse by continuing to discriminate against the Plaintiff based upon her permanent physical disabilities and perceived mental disability breaching the Correction Officers Benevolent Associations Collective Bargaining Agreement concerning all forms of work related discrimination as well as violating state and federal laws concerning this matter. The Defendants tortiously interfered with staff members from NYCERS by improperly influencing them to

arbitrarily and capriciously deny the Plaintiff a performance of disability retirement, which are the same occupational disabilities they medically discharged her for in addition to the Defendants intentionally impairing and diminishing her regular retirement benefits and concealing money that is owed to the Plaintiff in violation of Title 42 USC 2000d; Title 40 USC 122(a); Article 14, Section 507-c of the Retirement and Social Security Law; and in violation of the General Municipal Law, Section 207 of.   In New York State pension rights of state and local government employees are protected from being reduced by the New York State Constitution, Article V, Section 7. *Klienfeldt v NYCERS, 36 NY.2d 95 (1975) and CSEA v Regan, 71 NY2d 653 (1988) Klienfeldt*. The Plaintiff demands remedy and relief in the amount of $50,000,000.00 Fifty Million dollars in punitive, pecuniary, and compensatory damages.

## THIRD CLAIM

The Defendants retaliate against the Plaintiff by conspiring to, and actually depriving her of her rights in violation of  Title 42 USC 1983, Title 18 USC 241, Title 18 USC 2511 demonstrated by a preponderance of evidence   a prima facie case (1) she was constructively discharged from employment; (2) The Defendants criminally trespassed upon her private property and invaded her house (home invasions) and effects; (3) The Defendants and their accomplices damaged the Plaintiffs property (vehicle) to stop her from proceeding in court on two occasions in the vicinity of the District Court and the Appellate Court: (4)  The Defendants and their accomplices conspired and actively intercept and publicly furnish the Plaintiffs, her relatives and past intimate partners electronic communications prior to his death; (5) the Defendants impede the Plaintiffs, her relatives and past intimate partner's ability to freely travel upon highways and local streets; (6)The Defendants and their accomplices conspire to impose fines upon the Plaintiff, her relatives for exercising their rights to travel. The Defendants and their criminal accomplices / conspirators continue to retaliate against the Plaintiff by stalking her and her relatives interstate, and by intentionally sexually exploiting her, her relatives and past intimate partner without their implied or expressed consent in retaliation for the Plaintiff objecting to being sexually harassed at work by another employee, Aaron Scarlett in addition to the Plaintiff objecting to illegal and unlawful employment practices.   The Defendants and their accomplices stalk her interstate to intimidate, threaten and oppress her and interfering with her and her relative's rights to freely travel causing the Plaintiff and her relatives to be late to appointments or to completely miss engagements causing them lost opportunities and additional economic damages.  The Defendants interfere with the Plaintiffs and some of her relatives medical care, mail, access to legal counsel which is causing irreparable damages. The Defendants conspired to deprive the Plaintiff of employment , her salary, and correct pension benefits. The Defendant(s) are in violation of Title 18 USC 241, the United States Constitution Article IV, Section IV, Amendments IV, IX,   United Nations Universal Declaration of Human Rights Articles 1,3,5, 7, 12, 21 Section 2., Article 25, Section 2.   The Plaintiff seeks relief in the amount of $30,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, $5,000,000.00 exemplary damages and $5,000,000.00 pecuniary damages. A total of $45,000,000.00 as a remedy for this claim.

## FOURTH CLAIM

The Defendants and their criminal accomplices / conspirators deprive the Plaintiff of her rights under color of law in violation of Title 18 USC 242 demonstrated by a preponderance of evidence a prima facie case that Under color of law, office and authority the Defendant(s) use their positions as the Commissioner of the New York City Department of Corrections in concert with other Correctional staff members, as well as other employees who work for other Law Enforcement Agencies and Municipal Agencies to collectively retaliate against the Plaintiff for objecting to Arron Scarlett's unwanted sexually harassing behavior at work by (1) employing certain staff members and employees of other Law Enforcement and  Municipal agencies  to deprive the Plaintiff, some of her relatives, and intimate partner of their Inalienable Rights, Human Rights and Rights secured by the United States Constitution by criminally abusing their authority to illegally surveil the Plaintiff and her relatives by criminally trespassing upon their personal property / homes without their knowledge or expressed or implied consent depriving them of their Rights to be secure in their persons, houses, papers and effects by illegally, and unlawfully seizing papers, and personal effects from their homes and depriving them of their privacy and security inside of their homes by illegally, unlawfully surreptitiously installing covert video cameras and eaves dropping equipment inside of their homes without their knowledge or implied or expressed consent. (2) There is Evidence of the Defendants history of official misconduct that they have spied on personnel from the Department of investigations and act under color of law, authority, and office to deprive the Plaintiff and her relatives of their rights.  (3) The Defendants and their Accomplices act under color of law, authority, and office by making false statements and accusations about the Plaintiff, some of her relatives to get other individuals to discriminate against them so that they would be deprived of same benefits, liberties, and privileges the rest of society has and for the intentional purpose of oppressing them with the aid of others while intentionally damaging their reputations;   (4) The Defendants under color of law impose Unconstitutional Parking Tickets/ Summons / Bills of Exchange in an attempted to impede the Plaintiff's and her relatives ability to travel and cause her economic damages; (5) The Defendants misuse their employment positions to commit crimes against the Plaintiff, her family and intimate partner  to intrude upon their solitude to produce and publicly furnish revenge porn, intimate images of them and their private body parts that includes breasts, vaginas, penises and buttocks to the public over the world wide web / dark web without their implied or expressed consent and without  their knowledge to retaliate against the Plaintiff.  Some of the Plaintiffs relatives are located in different territories throughout North America as well as her intimate partners relatives are as well.  Some of the Plaintiff's relatives have died in connection with this hate crime as well as some of her intimate partners relatives have died in relationship to this hate crime.  This hate crime is motivated by the Plaintiffs national origin, sex / gender. The Defendants have intentionally and discriminately deprived the Plaintiff of employment, her salary, medical benefits, and correct pension benefits. The Defendants actively deprive the Plaintiff, her relatives and deceased intimate partner of their security which is the right to life, and the right to have privacy in their homes and any other place where they have the expectation of privacy.  The Plaintiff seeks indefinite injunctive relief, and monetary relief as a remedy and as a redress for her grievances in the amount of $80,000,000.00 for compensatory damages, 30,000,000.00 for punitive damages, 10,000,000.00 pecuniary damages in addition to reasonable attorneys fees.  A total of $120,000,000.00 One Hundred and Twenty Million Dollars as a remedy for this claim.

## FIFTH CLAIM

The Defendants who continue to act with complete malice towards the Plaintiff retaliate against the continue to stalk her interstate, eavesdrop, intercept and disseminate all of the Plaintiffs and her relatives oral, wire, wireless, electronic communication intentionally making their private information and private facts public that are of no concern to the public and for the intentional purpose of disrupting their lives in addition to continuing to broadcast and furnish unlawful nude surveillance images of the Plaintiff, her relatives and intimate partner with complete malice and reckless disregard for their lives, Human Rights, and their rights secured by the United States Constitution. The Defendants actions would cause any reasonable individual to take offense to their intentional egregious acts that are in violation of Title 42 USC 1983 Deprivation of Rights, and New York Penal Laws 250.05, 250.60,  250.50, 250.30 The Plaintiff, her relatives and intimate partner has equal rights under law pursuant to the United States Constitution, Title 42 USC 1981. The Defendants are in continual violation of Title 34 U.S.C 12291 Section 40 by Stalking through the use of Technological Abuse for the purpose of harming, threatening, intimidating, controlling, stalking, harassing impersonating and monitoring the Plaintiff / Petitioner, her relatives while falsely impersonating them by using spoofing technology in photo or video accessing email accounts, texts unwanted repeated phone calls with the intent to deceive, cause harm by sharing and furnishing their private information , photographs , and videos without their expressed or implied consent which is illegal and unlawful. The Plaintiff demands indefinite injunctive relief and monetary relief for a redress of her grievances and as a remedy in the amount of $30,000,000.00 Thirty Million Dollars in compensatory damages, $30,000,000.00 Thirty Million Dollars in pecuniary damages, $10,000,000.00 Ten Million Dollars in punitive damages in the amount of a total of 70,000,000.00 Seventy Million Dollars as a remedy for this claim

## SIXTH CLAIM

The Defendant(s) and their accomplices continue to  conspire and extort the Plaintiff, her relatives by using some of their accomplices to act under color of law by imposing Unconstitutional Parking Tickets/ Summons / Bills of Exchange to causing the Plaintiff and her relatives economic hardships and for the purpose of a malicious prosecution. The Defendants and their accomplices continue to extort the Plaintiff by trying to intimidate her into being quiet about them sexually harassing and sexually exploiting her, her relatives and intimate partner by interfering with her pension benefits causing it to be diminished, impaired and committing acts of genocide against her relatives some who have died and some who are injured as well as committing acts of genocide on relatives of her intimate partner while depriving them of their Human Rights, and Constitutional Rights by continuing to stalk the Plaintiff, her relatives and intimate partner and some of his relatives in an organized manner with the intention killing them which is unbeknownst to some of the people they solicit by making false statements and accusations to participate in this crime throughout her neighborhood and other geographical areas and businesses which is fraud under Title 18 USC 1001.  Under the RICO act the Defendants conspired to continue their well financed illegal covert crimes and activities against the Plaintiff who was forced into involuntary servitude because of  the conditions the Defendant(s) inflicted upon her and her relatives and intimate partner. The Defendants are in violation of Title 18 USC 1961, RICO ACT.  The Plaintiff demands immediate injunctive relief for herself and her relatives and monetary relief in the amount of $ 50,000,000.00 Fifty Million Dollars as a remedy and a redress for her grievances.

## SEVENTH CLAIM

The Defendants actions against the Plaintiff and some of her relatives are a form of human trafficking where the Plaintiff and some of her relatives are held into involuntary servitude by the Defendants who transmit nude images of the Plaintiff,  some of her relatives through video voyeurism that can yield or is yielding a profit which the Defendants know violates Title 18 USC 1584(a), and its without any benefit to the Plaintiff which clearly exhibit's the Defendants reckless disregard for the Plaintiff life whom they trespassed upon and exploit.  The Defendants are financially benefiting by exploiting the Plaintiff which is a form of involuntary servitude and abuse under  Title 18 USC 1589 (a1), (a2), (a3), (a4), and the Defendant(s) intentionally injured the Plaintiff economically for submitting a complaint alluding to their unconsented voyeuristic activities which they benefit from is in violation of Title 18 USC 1593A.  Title 18 USC 1595 provides a civil remedy the Plaintiff seeks a remedy/restitution of 1,000,000.00 in punitive damages to be forced to endure this harmful act committed by the Defendant(s) and immediate full retirement benefits for being subjected to forced servitude for 8 years and counting. Each and every day is considered to be 3 tours of duty which is equivalent to 5475 tours of forced servitude which is equivalent to 20+ years.  The Defendant(s) actions are intentionally wanton and are acts of domestic terrorism as defined by 18 USC 2331(A), (B1), (5A), (5B1), (5B2), ( C ).  The Plaintiff seeks immediate injunctive relief from the Defendant(s) who are in direct violation of Title 18 USC 1584(a), 18 USC 2331(A), (B1), (5A), (5B1), (5B2), ( C ), Title 18 USC 1593A. The Plaintiff demands injunctive relief for her and her relatives and monetary relief in the amount of $ 10,000,000.00 Ten Million Dollars in pecuniary damages as a remedy and as a redress for her grievances.

## EIGHTH CLAIM

The Defendants discriminated against the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party in terms of compensation.  The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was underpaid during her employment with the City of New York / New York City Department of Corrections.  In addition to already being underpaid she was discriminately denied hazard pay when she was assigned to work in the Central Punitive Segregation Unit for four years.  During the period the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was working in the Central Punitive Segregation Unit "CPSU" she requested the Hazard Pay which she should have automatically received since she was assigned to work in a hazardous area in which other employees who were assigned to work there with inmate contact and subjected to hazardous working conditions like having blood, urine, feces, thrown on them or slashed or cut at any time in addition to dealing with individuals who are highly assaultive and combative.  The Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's salary was diminished by 12 % as a result of her being wrongfully denied hazard pay when she was working and assigned to work in a hazardous area "CPSU" in addition to being underpaid.  The Plaintiff monetary relief in the amount of $10,000,000.00 Million Dollars in compensatory damages as a remedy and as a redress for her grievances

## NINTH CLAIM

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party was injured by the Defendants negligent hiring, retention, and training practices. The Defendants were and have been reckless and negligent in their hiring and retention practices by failing to properly vet and investigate the background of all employees both hired and appointed to work for New York City Department of Corrections, which would have revealed a prospective employees propensity for harming other employees as well as the public. As a result of the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party, her relatives and loved ones have been significantly injured by the Defendants intentional and actionable discrimination and employment retaliation that is of a criminal nature and has ended with fatalities. The Plaintiff demands indefinite injunctive from the Defendants and monetary relief as a redress for her grievances in the amount of $ 20,000,000.00 Twenty Million Dollars in Compensatory Damages.

## TENTH CLAIM

The Defendants in this matter are committing a multitude of crimes against Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives in retaliation for her asserting her rights as a human being and as an employee. The Defendants publicized their intentional discrimination and criminal acts of retaliation and abuse of the Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party who is being used as an example to deter other employees from coming forward with complaints about sexual harassment or other employment related issues that could be resolved in a civilized and lawful manner. The Plaintiff demands indefinite injunctive from the Defendants and monetary relief as a redress for her grievances in the amount of $10,000,000. Ten Million Dollars in Punitive Damages.

## ELEVENTH CLAIM

The Defendants and their criminal accomplices / conspirators who conspired to, and deprived the Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party and her relatives of their rights under color of law while stalking them interstate and internationally are responsible for the premeditated murder and hate crime of her father who was a stalking victim and a witness of this crime. The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party seeks a remedy for the wrongful death of her father. The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party seeks $100,000,000.00 One Hundred Million Dollars in Collateral Damages, $10,000,000.00 Ten Million in punitive damages.

An employer must know what boundaries are. What an employee does outside of the workplace or inside of their home where they have a reasonable expectation of privacy is private. An employer does not have the right to invade or direct the invasion of an employee's home or the homes of their relatives nor does an employer have the right to stalk, criminally harass or sexually

exploit an employee or their relatives interstate or internationally or under any circumstances.  An employer regardless of their Job Title. Status or political affiliations do not have the right to discriminate against an employee based upon their Religion, Sex/gender, National Origin, Disability, Political Affiliation, Societal Affiliations, or lack of Political or Societal Affiliations, nor do they have the right to act under color of law, office or authority to criminally abuse their power for the malicious purpose of infringing upon the rights of another human being based upon their beliefs, prejudices and biases.

The Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's and her relatives lives will never be the same again, and a consent decree is needed to prevent these crimes from happening to other employees.  Coordinated Stalking, Organized Stalking and Gang Stalking are horrific crimes that should not be committed against any human being.  The court cant do anything about all of the crime syndicates that are involved in this crime but they can start within this court system and New York City Department Of Corrections to ensure that this does not ever happen to another employee.  Therefore, a Consent Decree is needed as well as other constraints.

The Plaintiff/ Petitioner / Claimant / Crime Victim / Aggrieved and Injured Party moves the court to compel the Defendants to comply with this consent decree to prevent New York City Department of Corrections from participating in organized crime, criminal activities and to deter them from being a crime syndicate to prevent injuries to other employees and to those who are incarcerated.

**CONSENT DECREE**

NEW YORK CITY DEPARTMENT OF CORRECTIONS must adhere to all City, State, Federal Laws which includes International Treaties, and Human Rights Laws.

NEW YORK CITY DEPARTMENT OF CORRECTIONS is in a position of public trust and must be a creature of the United States Constitution and must be in strict compliance with the United

States Constitution and it must never be privatized because it will not be a creature of the United States Constitution and even more human rights abuses will take place against employees and inmates.

NEW YORK CITY DEPARTMENT OF CORRECTIONS must develop better screening process for applicants of employment whether they are hired or appointed, both uniformed and non-uniformed staff must be properly screened and investigated for employment.

THE CITY OF NEW YORK AND NEW YORK CITY DEPARTMENT OF CORRECTIONS must implement an anticorruption and antibribery Policies and Directives pertaining to workplace violence interdepartmental corruption, discrimination and employment retaliation which is the root cause of a hostile and unsafe work environment.

NEW YORK CITY DEPARTMENT OF CORRECTIONS, Employers and employees are to refrain from gang activity and from committing egregious criminal acts in the workplace and against all employees.  If an employer refuses to abide by OSHA Standards, City, State, Federal Laws including International Treaties, and Human Rights Laws, and creates a hazardous, hostile and offensive work environment regardless of his Position or Title he or she must be immediately removed for the welfare and safety of all employees.  An employer must not create an environment of violence and intimidation.  If an employer is unlearned and does not know what to do if an employment related matter arises between two employees or more he /she should be advised by legal counsel how to address employment related matters in a legal and lawful manner that is fair to all employees, and not resort to street or brutish tactics based upon favoritism, nepotism of any type.  When an employer acts outside of the scope of his/ her duties related to any crime that is committed against an employee in retaliation for exercising their rights or for any other reason, the agency or department in which they are responsible for operating is liable for their actions and the

Municipality in which it operates under its authority is also liable because they acted in ultra vires and used their employment positions to create and commit the offense(s).

NEW YORK CITY DEPARTMENT OF CORRECTIONS, Employers and employees must refrain from discriminating against an employee based upon Religion, Sex/gender, National Origin, Disability, Political Affiliation, Societal Affiliations or lack of Political or Societal Affiliations.

NEW YORK CITY DEPARTMENT OF CORRECTIONS, Employers and employees must refrain from criminally abusing their power and from acting under color of law, office and authority for the purpose of abusing or infringing upon the rights of another human being.

**PRE TRIAL DEMAND FOR DISCOVERY**

Attached is a Demand for Discovery the Defendants have 30 days from the filing of this demand to answer it in its entirety or it's an admission of the truthfulness contained in the statements and an admission of the questions unanswered.

The production of documentation in the discovery demand is required, answers and admissions must be completed and each and every question must be answered within 30 days from the service of this document.

If the Defendants fail to comply with the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's request for discovery it will be deemed an admission of the statements in the answers and admissions part of discovery.

The purpose of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Verified Petition and Complaint is to get indefinite injunctive relief to enjoin the Defendants criminal course of conduct against her and her relatives which are contrary to the United States Constitution.  The condition of this injunction is attached.

The purpose of the Plaintiff's / Petitioner's / Claimant's / Crime Victim's / Aggrieved and Injured Party's Hybrid Petition and Complaint is for a redress of her grievances for the intentional injuries inflicted upon her by the Defendants for their ongoing criminal course of conduct towards her, intentional and actionable employment discrimination, employment retaliation, and deprivation of rights under color of law which are secured by the United States Constitution, and pursuant to Title 42 U.S.C 2000e-17 et al; Title 42 U.S.C 2000e-2; Title 42 U.S.C 2000e-3; Title 42 U.S.C 1983, Title 42 USC 1981; Title 42 USC 1981a; Title 42 U.S.C 2000e-17 et seq, Title 42 U.S.C 12112, Title 29 C.F.R 1604.11, Title 18 USC 241; Title 18 USC 242;Title 18 USC 1801 Title 29 C.F.R 1604.8,Title 29 USC 623, New York Penal Laws, 245.15, 250.05, 250.30, 250.45, 250.60: Title 29 USC 206; New York City Human Rights Law 8-107, 8-107.11; NYC Administrative Code 10-180 New York State Human Rights Law 296 for injuries intentionally inflicted upon her by the Defendants who are willfully in violation of all of these laws who continue to retaliate against for her objecting to being sexually harassed in the workplace by another employee.

## MEMORANDUM OF LAW

### UNITED STATES CONSTITUTION

### Article IV Section 3, subsection (2)

The Congress shall have power to dispose of and make all needful Rules and Regulations respecting the territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any claims of the United States, or of any particular state.

### Article IV Section 4

The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion: and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

### Article VI, Section 2.

This Constitution, and he Laws of the United states which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the

supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

**NEW YORK STATE CONSTITUTION**

**Article I, Section1.**
No member of this state shall be disfranchised or deprived of any of the r rights or privileges secured to any citizen thereof,

**Article V, Section 7**

After July 1, 1940 , membership in any pension or retirement system of the state of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.

**Title 40 U.S.C 122**
(a) Prohibition on sex discrimination
With respect to a program or activity carried on or receiving federal assistance under this subtitle, an individual may not be excluded from participation denied benefits, or to otherwise discriminated against based on sex.

**Title 42 U.S.C 2000d**
Prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin. "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance."

**Title 29 U.S.C 151**
Findings and declaration of policy
It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

**Title 29 U.S.C 157**
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

**Title 29 U.S.C 158**

(a)  Unfair labor practices by employer. It shall be an unfair labor practice for an    employer—

(1)  to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2) to dominate or interfere with the formation or administration of any labor    organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for non membership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed   charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

## Title 29 U.S.C 162

Any <u>person</u> who shall willfully resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of duties pursuant to this subchapter shall be punished by a fine of not more than $5,000 or by imprisonment for not more than one year, or both.

## Title 29 U.S.C 164.C1

(2)Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines,

pursuant to paragraph (1) of this subsection, to assert jurisdiction.

**Title 42 USC 2000e-2(a)(1)** provides It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individuals race, color, religion, sex , or national origin.

**Title 42 USC 2000e-2(c)(1)** provides that It shall be an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; (2) It shall be an unlawful employment practice for a labor organization to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment because of such individuals race, color, religion, sex, or national origin; or (3) It shall be an unlawful employment practice to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

**Title 42 USC 2000e-3(a)** provides that it shall be an unlawful employment practice for an employer to discriminate against any individual because he has opposed any practice made an unlawful employment an unlawful employment practice by this subchapter or because she has, made a charge.

**Title 29 CFR § 1604.11** prohibits sexual harassment: (a) Harassment on the basis of sex is a violation of section 703 of title VII. 1 Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. 1 The principles involved here continue to apply to race, color, religion or national origin. (b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case-by-case basis.  (c) [Reserved]; (d) With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. (e) An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and

appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees. (f) Prevention is the best tool for the elimination of sexual harassment. An employer should take all steps necessary to prevent sexual harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under title VII, and developing methods to sensitize all concerned.

**Title 18 U.S.C 241** prohibits two or more persons from conspiring to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death

**Title 18 USC 242** prohibits the deprivation of rights under color of law and provides that "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## LEGAL BASIS FOR RELIEF SOUGHT

Title 29 U.S.C 1140 prohibits the Defendants and their accomplices from interfering with Plaintiff / Petitioner's / Claimant's protected rights.

The Crime Victims Rights Act codified as Title 18 U.S.C 3771(a)(1),(2),(3),(4),(5),(6),(7),(8),(9) provides that A crime victim has the right to be reasonably protected from the accused.  (2) The right to reasonable, accurate and timely notice of any public court proceeding, or any parole

proceeding, involving the crime or of any release or escape of the accused.  (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that the testimony of the victim would be materially altered if the victim heard other testimony at that proceeding.  (4)  The right to be heard at a public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.   (5) The reasonable right to confer with the attorney for the Government in the case.  (6) The right to full and timely restitution as provided in law.  (7) The right to proceedings free from unreasonable delay.  (8) The right to be treated with fairness and with respect for the victim's dignity and privacy, (9)The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement. (10) The right to be informed of the rights under this section and the services described in section 503c of the Victims Rights and Restitution Act of 1990 codified at Title 42 U.S.C 10607(c)and provided contact information.

Title 18 U.S.C 3771, Section B provides the Plaintiff / Petitioner / Claimant who is the aggrieved and injured party and the crime victim the following rights "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the right described in subsection (a) before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding.  The reasons for any decision denying relief under the chapter shall be clearly stated on the record.

The Plaintiff / Petitioner / Claimant seeks immediate permanent injunctive relief and a Restraining Order from the Defendants who continue to discriminate against the Plaintiff based upon her sex/gender, age, national origin, work and inmate related permanent disabilities, and current status as a crime victim / stalking victim which is directly work related,  are retaliating against her for

objecting to being sexually harassed at work by another employee by stalking her and her relatives interstate, illegally and unlawfully intercepting and disseminating all of Plaintiff's / Petitioner's / Claimant's and her relatives oral, wire and wireless electronic communications in addition to illegally and unlawfully criminally trespassing upon their personal and private property / houses / homes / apartments and illegally and unlawfully installing hidden eavesdropping and surveillance equipment to stalk, eavesdrop, monitor, record and disseminate images of them inside of their homes where they all have a reasonable expectation of privacy with the intentions of injuring them by disseminating unauthorized images and intimate images of them to the public over the internet without their knowledge, and without their implied or expressed consent.  The Defendants and their accomplices continue to stalk the Plaintiff / Petitioner / Claimant and her relatives with the intentions of killing them and with the intentions to continue to inflict permanent injuries on them by dehumanizing, degrading and sexually exploiting them against their will.  The Defendants and their accomplices continue to oppress them for the unjust purpose of intentionally inflicting emotional distress upon them just because the Plaintiff / Petitioner / Claimant objected to being sexually harassed at work.   The Defendants and their accomplices continue to use their employment status and employment resources to act under color of law, office and authority to continue to discriminate, retaliate and oppress the Plaintiff / Petitioner / Claimant by employing illegal, unlawful and unfair employment practices depriving her of employment, material benefits, full retirement benefits, performance of duty disability retirement as well as tortuously interfere and deprive the Plaintiff / Petitioner / Claimant other financial opportunities that's not related to employment which is exhibited by the Defendants intentional extreme outrageous conduct against the Plaintiff / Petitioner / Claimant and her relatives.  The Defendants are directly and willfully violating the United States Constitution, Article VI, Section 2; Article IV, Section 4; the 1st , 2nd,

4th, 5th, 7th, 8th, 9th, 10th Amendments, as well as The Treaty of Peace and Friendship Articles 21, and 22; The Zodiac Constitution; The International Covenant Against Torture and Inhumane or Degrading Treatment or Punishment Part I,  Article 1,  Article 2 subsection 1, 2, and 3, Article 5, Sections (1)(a)(c),  2, 3; The Declaration of Right On Indigenous Peoples Articles; International Convention on the Elimination of All Forms of Discrimination Against Women; The International Covenant on Civil and Political Rights; The Defendants intentional actions against the Plaintiff / Petitioner / Claimant / Aggrieved  and injured party are prohibited by  Title 42 U.S.C 2000e-2; Title 42 U.S.C 2000e-3; Tile 42 USC 2000ff-6(f); Title 42 U.S.C 12112; Title 42 U.S.C 1981; Title 18 U.S.C 2261A;  Title 18 USC 249;Title 18 U.S.C 1801; The Communications Decency Act codified as Title 47 U.S.C 230(5); Title 18 U.S.C 241; Title 18 U.S.C 242; Title 18 U.S.C 1983; Title 18 U.S.C 3771; Title 18 U.S.C 2511; Title 42 U.S.C 12111; Title 42 U.S.C 12203; Title 42 U.S.C 623; Title 18 U.S.C 2331 (A),(B1), (5A0, (5B1), (5B2), ( C ); 29 C.F.R 1604.11(A) (3); 29 U.S.C 1140; Human Rights Laws 8-107.1; The Communications Decency Act, Section 230 codified as Title 47 U.S.C 230; Title 18 U.S.C 664; NYC Administrative Code 10-180; New York Penal Law 245.15; Alabama Code 15, Article 5, Section 13A-6-90, 13A-6-240; 13A-6-240; 13A-4-1, 13A-4-2, 13A-4-3, 13A-4-4, OCGA 16-11-90; Tennessee Code, Chapter 872

**IN CONCLUSION**

The Plaintiff / Petitioner / Claimant / Crime Victim / Aggrieved and Injured individual who has been injured by the Defendant and their criminal accomplices / conspirators has remedies available to her as a redress for her grievances pursuant to, and are enforceable by:  Title 42 U.S.C 2000e-5(e )(3); Civil Rights Act of 1991 codified as Title 42 U.S.C 3553; American Disabilities Act of 1990 section 501 codified as 42 U.S.C Sec. 12117; Title 42 USC 2000e-4; Title 42 USC 2000e-5; Title 42 U.S.C 2000e-6; Title 42 U.S.C 2000e-8. Title 42 U.S.C 2000e-9 of this title shall be the

powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

The Victims Rights and Restitution Act of 1990 codified as 42 U.S.C 10607 also provides relief for the  Plaintiff / Petitioner / Claimant / Crime Victim who is the Aggrieved and Injured Party who is also entitled to relief pursuant to Title 18 U.S.C 1595 (a), (b)(1),(b)(2),( c ) (1), ( c )(2); as well as Tile 42 U.S.C 2000ff-6 which provides power and procedures and remedies  in sections 705, 706, 707, 709, 710,  and 711 of Title 42 U.S.C 2000e-4 –  Title 42 U.S.C 2000e-6  and Title 42 U.S.C 2000e-8 - Title 42 U.S.C 2000e-10 to the person alleging the violation of title VII of that Act codified as Title 42 U.S.C 2000e shall be the powers procedures and remedies this chapter provided to the person alleging an unlawful employment practice in violation of this chapter. Amendments to Title VII in 1972 and 1991extended protection to public sector employees and authorizes a**wards of both compensatory and punitive damages** .  Congress and the Courts have extended the prohibition against sex discrimination to include prohibitions against sexual harassment.

Title 29 U.S.C 1132 (a)(1); (B); (2); (3);(4);(5);provides that "a civil action may be brought by a participant or beneficiary for the relief provided for in subsection (c) of the section, or to recover benefits due to him under this terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right s to future benefits under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the

plan, or  (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title."

**PROVISIONS SET FORTH IN THE NEW YORK STATE CONSTITUTION**

provided in "Article V, § 7 of the New York Constitution provides protection as 'a contractual relationship' the benefits of membership in a public pension or retirement system against diminishment and impairment. The provision 'fix[es] the rights of the employees at the time of commencement of membership in [a pension or retirement] system, rather than as previously at retirement*."  Ballentine v Koch (89 NY2d 51, 56 [1996]).*  As the Court of Appeals stated in (*Matter of Guzman v New York City Employees' Retirement Sys., 45 NY2d 186, 190-191*, citing Birnbaum v New York State Teachers Retirement Sys., 5 NY2d 1, 9), and thus prohibits unilateral action by either the employer or the Legislature that impairs or diminishes the rights established by the employee's membership (*Matter of Village of Fairport v Newman, 90 AD2d 293, 295, appeal dismissed 58 NY2d 1112*)."

The Defendants who act with complete malice intentionally and willfully disregard and violate the United States Constitution, Federal Law, State Laws and City Laws.  The Defendants are willfully in direct violation with the United States Constitution, Article VI, Section 2; Article IV, Section 4;and  the 1st, 2nd, 4th, 5th, 7th, 8th, 9th, 10th Amendments, as well as The Treaty of Peace and Friendship Articles 21, and 22; The Zodiac Constitution; The International Covenant Against Torture and Inhumane or Degrading Treatment or Punishment Part I,  Article 1,  Article 2 subsection 1, 2, and 3, Article 5, Sections (1)(a)(c),  2, 3 ; The Declaration of Right On Indigenous Peoples Articles; International Convention on the Elimination of All Forms of Discrimination Against Women; The International Covenant on Civil and Political Rights; The Defendants

intentional actions against the Plaintiff / Petitioner / Claimant / Aggrieved and injured party are prohibited by  Title 42 U.S.C 2000e-2; Title 42 U.S.C 2000e-3; Title 42 U.S.C 12112; Title 42 U.S.C 1981; Title 18 U.S.C 2261A; Title 18 U.S.C 1801;  The Communications Decency Act codified as Title 47 U.S.C 230(5); Title 18 U.S.C 241; Title 18 U.S.C 242; Title 18 U.S.C 1983; Title 18 U.S.C 3771; Title 18 U.S.C 2511; Title 42 U.S.C 12111; Title 42 U.S.C 12203; Title 42 U.S.C 623; Title 18 U.S.C 2331 (A),(B1), (5A0, (5B1), (5B2), ( C ); 29 CFR 1604.11(A) (3); Human Rights Laws 8-107.1;

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully requests the Court to grant the Plaintiff relief as follows:

Awarding Plaintiff restitution, and all legal and equitable relief for the Defendants discriminatory actions against her under Title VII Civil Right Act of 1964 as codified as Title 42 USC 2000e to 2000e-17,  Americans with Disabilities Act of 1990.  The Plaintiff seeks equitable relief for the Defendants illegal employment practices against her under  Title 42 USC 12112 - 12117,  Title 18 USC 241,  The Plaintiff seeks relief for the defendant who deprives her and some of her family members of their rights under Title 18 USC 242,  Title 18 USC 2261A, Privacy Act of 1974, Title 42 USC 1983,  New York Penal Laws 250.05, 250.60,  250.50, 250.30  and for the constructive discharge of the Plaintiff.  The Plaintiff seeks  compensation that's been withheld, back pay. and for mental anguish, emotional distress, public humiliation, and forced servitude.

The Plaintiff demands indefinite injunctive relief from the Defendant(s) and their conspirators from committing crimes against the Plaintiff, her family members, and a loved one to cease stalking and all illegal activities against her and individuals who are related to her and closely associated  with her.

Ordering that the Defendants and their affiliates fully comply with Federal, State laws

1.      Judgment in favor of the Plaintiff in the amount of $565,000,000.00 Five Hundred Sixty Five Million Dollars or in current currency plus the costs of this action for Restitution for substantive injuries, Irreparable damages, speculative damages, punitive damages, compensatory damages,  and special damages for injuries the Plaintiff sustained at the behest of the Defendants extreme outrageous conduct that are egregiously criminal in nature and outrageously offensive over the course of eight years.

Date: March 29, 2022                                    /s/ Vicky Ware Bey

                                                            _____
                                                            Vicky Ware Bey, In Proper Persona
                                                            Vicky Ware, Ex Relational

All Rights Reserved, UCC 1-207,
c/o 80 Patton Avenue
Wyandanch Territory, New York [11798]